**UNITED STATES**

v.

**Lawrence P. ROBINSON, Appellant.**

**No. 24475.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1971.

Decided Feb. 28, 1972.

Before TAMM and MacKINNON, Circuit Judges, and A. SHERMAN CHRISTENSEN,* U. S. Senior District Judge for the District of Utah.

PER CURIAM:

Appellant, convicted of first degree felony murder, second degree murder, and armed robbery, seeks reversal of these convictions on three grounds: the admission during trial of a pre-trial statement by appellant to the court, the inability of the court reporter to provide a complete trial transcript, and the alleged ineffective assistance of appellant's defense counsel.

The jury returned a verdict of guilty on all counts. On June 22, 1970, appellant was sentenced to life imprisonment on the first degree murder count, fifteen years to life on the second degree murder count, and ten years to life on the armed robbery count, all sentences to run concurrently.

Appellant's conviction arose from an attempted robbery of a Safeway store on September 16, 1969, when an armed man entered the store, confronted a security guard, struggled with him, and finally shot and killed the guard before making his escape.

One Owens testified that on the day of the shooting he was employed with another carpenter to install a turnstile at the Safeway store. Owens related that he saw the struggle between the guard and robber, went to the guard's aid by hitting the gunman on the back of the head with a hammer, and then took refuge outside of the store. He stated that he had taken a good look at the gunman while inside the store and then again while outside, from a distance of about three to five feet, under good lighting conditions, for a period of three to four minutes. Wilbert Lee testified that he had known appellant for a period of two years because they had at one time been incarcerated together. He testified that he had seen appellant near the entrance to the Safe-

Mr. Norman Diamond (appointed by this court) for appellant.

Mr. C. Madison Brewer, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. Jerome Wiener, Asst. U. S. Atty., also entered an appearance for appellee.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

way store on the day in question. Soon thereafter, he heard two shots and saw appellant flee from the store, bleeding from his head and carrying a gun. Lee then entered the store and saw the victim lying on the floor. Later that night he saw appellant standing outside a restaurant. Appellant inquired whether Lee wanted to buy a pistol for $40, but he did not indicate from where he had obtained the weapon. At the time of his testimony, Lee himself was being prosecuted for robbery. Lieutenant Robert M. Boyd of the Homicide Squad told the jury that when arrested on October 8, 1969, appellant had a band aid on the left rear of his head, covering a freshly healed three-fourths inch laceration. Aside from the purported admission of appellant next mentioned, there was sufficient evidence from which the jury could have concluded that the appellant was the armed man.[1]

When the case was first called, the following exchange took place out of the presence of the jury:

"MR. BONNER [Defense Counsel]: In this particular case, having spoken to the defendant, I think it would be well to have the defendant address the Court out of the presence of the jury.

"THE COURT: All right.

"DEFENDANT ROBINSON: How are you doing, Your Honor? The lawyer came to start the trial, but he has never told me, only about a year and I feel personally I am not ready to start trial.

"THE COURT: I can't understand the words you are speaking. Did you get that, Mr. Reporter?

"(Record read.)

"THE COURT: All right.

"DEFENDANT ROBINSON: I feel this way, because like he has never really talked to me on the grounds, you know, as far as how he is setting up this defense concerning my case. I feel I am going in blind, you know, just going to start this trial, although personally I know I am guilty. I know the consequences of the trial. I know the time involved—I would like to confer, to go over with him this case, you know, really get the trial together. Really, I don't know what he has in mind."

The admission of this statement into evidence before the jury created the decisive problem in the case.

■ Before admitting the statement the court, out of the jury's presence, gave appellant an opportunity for explanation. Appellant claimed that he had meant to say that he was innocent. The court ruled: "It is clearly an admission. . . . It is admissions or conclusions against the party making them. I will permit him to explain to the jury what he meant by that." The jury was then brought in and the court stated: "Ladies and gentlemen, this is an official transcript of what transpired in this Court this morning when the case was first called." The record containing appellant's statement was then read to the jury by the reporter. Thereafter, defense counsel questioned appellant about the statement. Appellant testified that he had meant to say that he was innocent but because of his nervousness had misstated his thoughts.[2] The govern-

---

1. We find it unnecessary to discuss various collateral arguments or questions concerning the validity or persuasion of the identification which appellant advances in his brief in support of his claims that his counsel was ineffective and which we regard as going purely to the weight of the evidence.

2. "Q. The Court asked you a question in Court this morning. Do you recall being in Court this morning?

"A. Right.
"Q. Do you recall saying something to the Judge?
"A. Right.
"Q. Now do you recall using these words, 'Personally, I know I am guilty.' Do you recall saying that?
"A. I don't recall it, but it was brought to my attention that that is what I said.
"Q. Did you mean to say that?
"A. No, I didn't mean to say that.
"Q. Are you guilty?

ment attorney placed a great deal of emphasis on appellant's statement, referring to it a number of times in his final summation.[3]

Appellant contends that the court erred in allowing the pre-trial statement to be introduced into evidence during the trial. This contention is based on appellant's right to remain silent, the necessity of expressly waiving this right, and an alleged conflict between appellant's Fifth Amendment right to remain silent and his right to have effective counsel under the Sixth Amendment. For reasons to be discussed below, we agree that the admission of the statement into evidence before the jury constituted prejudicial error and we reverse.

■ The phrase "although personally I know I am guilty" is somewhat unique. It was not a typical admission obviously intended to concede or establish an element of the crime or the presence or absence of a needed fact.[4] It hardly ap-

pears to be a confession since there was no identification of any particular offense referred to in the statement and appellant clearly intended to have a jury trial on the merits[5] of all of the specific charges with which he was confronted. Nor can it be considered a plea of guilty for similar as well as other obvious reasons. Yet in practical effect as far as the jury was concerned the statement likely partook of the nature of all three.

■ It has been stated that the distinctions between confessions and admissions are "subtle and questionable". People v. Chessman, 52 Cal.2d 467, 341 P.2d 679 (1959). The United States Supreme Court has indicated that admissions should receive the same cautious treatment accorded confessions. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). With this similarity in mind and the statement occurring as it did in the course of judicial proceedings before the judge,

---

"A. No, I am not.

"Q. What did you mean to say?

"A. I mean to say I know I am innocent, but, you know, when I was trying to go to my point, and I guess I was a little nervous, you know. I didn't say what I meant."

3. Indicative of the prosecution's argument is the following:

"You heard him testify that the defendant came into Court, and he didn't want to go to trial today, because he didn't think his lawyer, Mr. Bonner, had prepared an adequate defense. 'I feel I am going in blind, you know,' says Mr. Robinson. 'Just going to start this trial although personally I know I am guilty.'

"This was not made in the police station, this statement. This statement was not made in response to a question from me when he was on the stand. This was an unsolicited statement, a spontaneous statement made in the dignity of this Courtroom. Doesn't that corroborate the other evidence in the case? Doesn't that statement indicate that the testimony of Mr. Lee and Mr. Owens and testimony of the cut and the testimony of the general description, that all of that is the truth? 'Personally I

know I am guilty.' The dead man asks you to consider those words very, very carefully."

4. For example, in a case relied upon by the Government for supporting the statement, the admission in that case concerned the factual location of the appellant at the scene of the robbery. At the trial appellant denied standing near a radiator in a restroom. The Government was allowed to introduce appellant's statement before the U. S. Commissioner which said, "Don't you remember I was standing by the radiator when you walked up to the urinal; then I walked past you and walked right out the door?". Saunders v. United States, 114 U.S.App.D.C. 345, 316 F.2d 346 (1963), cert. denied, 377 U.S. 935, 84 S.Ct. 1339, 12 L.Ed.2d 299 (1964).

5. A strict "confession" is a complete and conscious admission of guilt. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). To be admissible, a confession must proceed from a "rational intellect and a free will". Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). It must be the "offspring of reasoned choice". United States v. Mitchell, 322 U.S. 65, 68, 64 S.Ct. 896, 88 L.Ed. 1140 (1944).

its examination in the light of standards applicable to confessions[6] and pleas of guilty[7] is relevant.

■ It is universally recognized. that a confession of a person accused of a crime may be admissible in evidence against the accused only if it was freely and voluntarily made, without duress, fear, or compulsion in its inducement and with knowledge of its nature and possible consequences. United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951). "[T]he term 'voluntary' means that the confession must be the product of the defendant's own judgment and operation of his own mind, uninfluenced by methods and devices which are denounced by law or by any extraneous disturbing cause which deprives him of his free will and volition." 29 Am. Jur.2d Evidence § 543, 595 (1970). Federal law commands that the trial judge shall "out of the presence of the jury, determine any issue as to voluntariness" of a confession. 18 U.S.C. § 3501 (1970). A "confession" is defined as "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." *Id.* at (e). The trial judge in determining the issue of voluntariness "shall take into consideration all the circumstances surrounding the giving of the confession." *Id.* at (b).

Viewing the circumstances surrounding the "admission" in the instant case, we find appellant speaking to the trial court in order to obtain more time to prepare his defense and to consult with his counsel. It seems unreasonable to assume that he had a knowledgeable and intentional purpose to confess the crimes charged, or any of them, challenging as he was his counsel's diligence in preparing defense in furtherance of the pleas of not guilty. Appellant's explanation as a slip of the tongue appears more reasonable.[8]

■■ Even if appellant had intended the statement as a confession of his guilt, it was still improperly admitted. There is no indication in the record that appellant had knowingly and intentionally waived his right against self-incrimination guaranteed by the Fifth Amendment.[9] When the appellant made the statement "although personally I know I am guilty" he appeared to be incriminating himself; there is no indication that he had waived his right to remain silent. A waiver "is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct.

6. 18 U.S.C. § 3501 (1970); Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); United States v. Robinson, 142 U.S.App.D.C. 43, 439 F.2d 553 (1970). *Compare* Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *and* Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962).

7. Rule 11, Federal Rules of Criminal Procedure provides:
   "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty . . the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

8. *See* note 2 *supra.*

9. In a case where the defendant's statement to a doctor was later used against him at his trial, this court stated:
   "Here, again, if his statements to the doctor were to be used in evidence against him, appellant was entitled, as a minimum, to advice as to his rights, followed by convincing proof of their waiver, such as *Miranda* establishes at least as one of the criteria by which to determine the voluntariness of a confession sought to be used in evidence." United States v. Robinson, 142 U.S. App.D.C. 43, 50, 439 F.2d 553, 560 (1970).

1019, 1023, 82 L.Ed. 1461 (1938). Concerning waiver, this court has said:

> "As with the right of counsel, waiver of the privilege [Fifth Amendment self-incrimination] must be informed and intelligent. There can be no waiver if the defendants do not know their rights. The rule must be the same, we think, when the record is silent or inconclusive concerning knowledge. Basic constitutional protections, especially in criminal cases, should not be suspended by mere inferences from indifferent facts or doubtful presumptions, whether of law or of fact. . . ."

Wood v. United States, 75 U.S.App.D.C. 274, 286, 128 F.2d 265, 277 (1942).

Appellant argues that when the court agreed to hear appellant "out of the presence of the jury" it impliedly indicated that any statement made by the appellant would not be used against him in court. Whether this implication be valid or not, the fact remains that the record fails to disclose that appellant was aware that by personally speaking to the court he was waiving his Fifth Amendment protection against the use to his prejudice of any statement he might make. In fact, the record is barren of any indication that he was advised, either before or during the pretrial hearing, of his constitutional right to remain silent[10] or the possible use against him before the jury of any statement he might make to the court out of the presence of the jury. The totality of circumstances strongly suggests lack of any waiver; it would seem that any waiver could be found at best only from "mere inferences from in-

different facts or doubtful presumptions". Wood v. United States, *supra*.

It is again evident that appellant's statement made at the pre-trial hearing should not have been admitted in the jury trial in view of established principles governing the acceptance of guilty pleas before the court. Although pre-trial factual "admissions" out of court are generally admissible at the trial, in-court statements not intended for the jury should be allowed into evidence only when procedures developed to insure their considered and voluntary nature have been followed. By having his statement in the nature of a plea of guilty introduced into evidence at the jury trial, appellant was in the worst possible position. Had he pled guilty in the usual manner he would have been entitled to judicial inquiry concerning his knowledge of the crime, the waiver of his constitutional rights, the voluntariness of the plea, and consequences of the plea.[11] Had he later applied for and been granted permission to withdraw his plea, the withdrawn plea could not have been used in evidence.[12]

Appellant argues also that by the admission of his pre-trial statement he was unlawfully compelled to surrender his Fifth Amendment right against self-incrimination in order to assert his Sixth Amendment right to adequate representation. Although the United States Supreme Court has held that a defendant's testimony in support of a motion to suppress evidence on Fourth Amendment grounds may not be used against him on the issue of guilt, Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), it seems not yet to have directly resolved

---

10. It should be noted that in both cases relied upon by the Government, Saunders v. United States, 114 U.S.App.D.C. 345, 316 F.2d 346 (1963), cert. denied, 377 U.S. 935, 84 S.Ct. 1339, 12 L.Ed.2d 299 (1964), and Nance v. United States, 112 U.S.App.D.C. 38, 299 F.2d 122 (1962) (*see also* 123 U.S.App.D.C. 289, 359 F.2d 273 (1966)), appellants were first advised of their constitutional right to remain silent before they made

their admissions to the United States Commissioners.

11. Fed.R.Crim.P. 11; McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

12. Gearhart v. United States, 106 U.S.App. D.C. 270, 273, 272 F.2d 499, 502 (1959); United States v. Long, 323 F.2d 468 472 (6th Cir. 1963).

such possible conflicts between Fifth and Sixth Amendment rights. The record before us does not sufficiently present such a problem as to warrant our further discussion of it. The appellant really was not compelled to do anything. One of the main difficulties of the attorney was an overspeaking client.[13]

Although admission of the pre-trial statement by itself requires reversal, appellant's second and third grounds for reversal will be noted since one touches upon the record relevant to the statement and the other throws into question the representation of the defendant by appointed counsel by reason of which as above noted appellant says he was required personally to address the court.

It is contended that the failure of the court reporter to supply him with a complete transcript of the proceedings violates federal law and thus in and of itself requires a new trial. The reporter's failure to supply a full transcript resulted from the theft of the reporter's notes covering the first day of trial. The reporter was, however, able to transcribe a tape recording made on that day except for eleven bench conferences, seven inaudible omissions, and several garbled passages. After the appeal was noted, appellant moved this court for summary reversal on the ground that the defective transcript was such as to deprive appellant of an effective appeal. By *per curiam* order, a motions division of this court denied appellant's motion without prejudice to resubmission of the issue on appeal and with an order di-

recting the parties to make an effort to settle the record. Pursuant to this order a supplemental hearing was held by the trial judge in an attempt to reconstruct the proceedings.[14]

Reporting of criminal trials in the federal district courts is governed by 28 U.S.C. § 753(b) (1970) which provides:

> "One of the reporters appointed for each such [district] court shall attend at each session of the court . . . and shall record verbatim by shorthand or by mechanical means which may be augmented by electronic sound recording . . . (1) all proceedings in criminal cases had in open court."

The term "proceedings" has been said to include voir dire examination of the jury, evidentiary presentations before the judge or jury, bench conferences, and arguments of counsel.[15]

■ Appellant relies upon United States v. Workcuff, 137 U.S.App.D.C. 263, 422 F.2d 700 (1970). In that case a jury instruction had been given in the absence of the court reporter. Even though the prosecutor submitted his notes of what he believed the court had said, this court held that the notes were not a sufficient record since neither trial counsel had any independent recollection of the instruction's content nor could either side recall whether defense counsel had made any objections to it. We stressed in *Workcuff* that exceptions to the Court Reporter Act (28 U.S.C. § 753 (b) (1970) *supra*) should be narrowly

---

13. As will be discussed *infra*, appellant's claim of inadequate representation during the trial is itself also without merit.

14. During the days of March 11, 12, and 15, 1971, the trial judge conducted hearings in open court. Present at those hearings were appellant's trial counsel, the trial prosecutor, the court reporter, appellant's counsel on this appeal, and on the latter two days appellant himself. Appellant was not present on March 11 because through inadvertence no one had arranged for him to be brought up from the jail. His appellate counsel, however, waived appellant's presence with the

agreement that the hearing would deal only with the untranscribed bench conferences. Court and counsel worked through the transcript, giving their recollections of the bench conferences, exploring those portions of the record which were inaudible, and attempting to fill in any other gaps which existed on the record.

15. Parrott v. United States, 314 F.2d 46 (10th Cir. 1963); Addison v. United States, 317 F.2d 808 (5th Cir. 1963), cert. denied, 376 U.S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605; Stansbury v. United States, 219 F.2d 165 (5th Cir. 1955).

applied. We reaffirm this view; but there are factors in the case at bar which render the transcript problem of lesser impact than in *Workcuff*. There was a court reporter present in the case at bar during all times in question and presumably he recorded "verbatim by shorthand or by mechanical means . . . all proceedings". The mandatory language of the statute may have been at least literally complied with unlike the failure in *Workcuff* to have a court reporter present during the jury instruction. It is clear again, however, that a stilted interpretation of the reach of the statute could defeat its very purpose—to make available to litigants, their attorneys, and the court when needed an accurate record of the proceedings, to remove uncertainty and speculation and to protect the rights of litigants.[16] Yet in the limited context of this case we are not prepared to hold that every inability to furnish complete reporter transcripts upon request is necessarily reversible error, especially in cases such as this where the unavailability of the transcript is not shown to have been the fault of either the court, the government, or the reporter and where a fair review upon appeal has not been frustrated.[17]

Although it is unfortunate that gaps existed in the record, the only ones critical to the points raised on appeal are some testimony and bench conferences regarding the pre-trial statement above discussed. There is still a sufficient record regarding this issue to permit full and considered appraisal on review, and for this purpose the reconstructed record may not be thought unacceptable within boundaries now seemingly approved by the Supreme Court.[18]

Appellant's final point is that he was denied his constitutional right under the Sixth Amendment to the effective assistance of counsel. In support of this contention appellant cites several examples of alleged incompetency: the failure of counsel to restrain appellant from addressing the court; the failure of counsel to object to the procedure employed during the in-court lineup; and the interrogation by counsel of appellant concerning past offenses. After careful review of the record we conclude that this point of appellant is not meritorious. At the time appellant addressed the court he was seeking a continuance with an implied criticism of his counsel in order that he might better prepare his defense. Had counsel prevented appellant from speaking he might have been, or might have been accused of being, in the position of protecting himself from appellant's charges and thus concealing from the court ap-

---

16. *See* Edwards v. United States, 374 F.2d 24 (10th Cir.), cert. denied, 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1966); United States v. Taylor, 303 F.2d 165 (4th Cir. 1962); Stansbury v. United States, 219 F.2d 165 (5th Cir. 1955).

17. *Cf.* Edwards v. United States, 374 F.2d 24, 26 (10th Cir. 1966) when it was said:
 "Failure to comply with the Court Reporters' Act, 28 U.S.C. § 753(b) (1) (1970), is not prejudicial error, per se. . . . However, it constitutes error to fail to report any portion of the proceedings in a criminal case where the unavailability of a transcript makes it impossible for the appellate court to determine whether or not prejudicial error was committed."

18. In Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971)

the Supreme Court, speaking about the type of record which must be provided to an indigent defendant, quoted with approval language found in Draper v. Washington, 372 U.S. 487, 495, 83 S.Ct. 774, 779, 9 L.Ed.2d 899 (1963):
 "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript."
*But cf.* Hardy v. United States, 375 U.S. 277, 290, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) (concurring opinion).

pellant's viewpoint concerning counsel's preparation. While precautions could well have been taken against such a statement as his client made—and the record really does not preclude the possibility that attempts to do so were made—yet any failure here may have been no less that of the court than of counsel; probably neither was bound to anticipate that such an unusual statement would be made by the appellant. Other claims of ineffectiveness on the part of counsel relate rather to tactical judgments and are not deemed substantial. It seems sufficient to observe that notwithstanding diligent efforts during the demands and exigencies of a trial it frequently occurs both before and afterwards that counsel's as well as his client's "lot is not a happy one".

The judgment is reversed and the cause remanded for a new trial.