Leroylyne COLE, Appellant,

v.

UNITED STATES, Appellee.

No. 79–1231.

District of Columbia Court of Appeals.

Argued April 10, 1984.

Decided May 24, 1984.

Karen Knopp O'Konski, Washington, D.C., for appellant.

Thomas E. Zeno, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

This appeal presents questions of first impression concerning this court's review

of criminal convictions in cases where some portion of the trial transcript is lost, stolen, or otherwise unavailable.[1]

A jury found appellant guilty of carrying a pistol without a license. D.C.Code § 22–3204 (1973). After a notice of appeal had been filed, the court reporter's notes of appellant's two-day trial were lost. This court returned the case to the trial court and ordered the parties to prepare a substitute statement of the evidence presented at trial. This substitute statement is now part of the record on appeal. Appellant challenges her conviction on the grounds that: (1) the substitute statement of trial proceedings and evidence is insufficient to permit meaningful appellate review; and (2) the substitute statement reveals that appellant lawfully possessed an unlicensed pistol in the District of Columbia, based on a recognized exception to D.C.Code § 22–3204 (1973). Because we agree with appellant's first contention and reverse her conviction on that ground, we need not consider the second issue presented.

I. FACTS AND PROCEEDINGS

A two-count indictment filed April 25, 1979, charged appellant with assault with intent to kill while armed, D.C.Code §§ 22–501, –3202 (1973), and carrying a pistol without a license, D.C.Code § 22–3204 (1973). Appellant's case was reached for trial on September 28, 1979, and on October 3, 1979, the jury found her guilty of carrying a pistol without a license. The jury returned verdicts of not guilty on the assault with intent to kill while armed charge and on the lesser-included offense of assault with a deadly weapon. The trial judge sentenced appellant to one year's imprisonment, suspended execution of the sentence, and placed appellant on probation for one year.

Following appellant's conviction and sentencing, her trial counsel, Paul Regan, filed a timely notice of appeal. Regan indicated that he intended to challenge two trial court rulings: (1) the trial judge's denial of a motion for judgment of acquittal, based on appellant's claim of insufficiency of the evidence; and (2) the trial court's decision to allow into evidence "an impeaching document without the government movant establishing a foundation for its introduction." Regan also requested preparation of a transcript of the entire trial.

Ordinarily, as soon as a transcript of the trial proceedings is prepared, it is filed with this court and a briefing schedule is set. In this case, however, no transcript was ever filed, and, on December 17, 1981, this court returned the matter to the trial court. At this point, over two years after entry of the judgment, the trial court discovered that the reporter's notes of appellant's trial had been lost and that there was no way to produce a verbatim transcript of the trial proceedings. This court then ordered preparation of a substitute statement of the evidence and proceedings pursuant to D.C. App.R. 10(j).

During this same period (late 1981), a conflict of interest developed between appellant and her attorney, Mr. Regan. Regan petitioned the trial court for permission to withdraw as appellant's counsel. On June 7, 1982, the trial court granted Regan leave to withdraw, with the understanding that he would cooperate in the preparation of a substitute statement of the evidence and proceedings. On June 6, 1983, this court appointed David Levitt to represent appellant and instructed him to prepare a Rule 10(j) statement "in consultation with appellant."

Unfortunately, Levitt was unable to obtain appellant's assistance in preparing the Rule 10(j) statement. Appellant had completed her probation well before the need for a substitute statement was discovered, and Levitt's efforts to contact her were fruitless. Levitt did, however, prepare a statement based on information obtained from conversations with Regan and with the Assistant United States Attorney who prosecuted appellant's case.

---

1. Also see this court's opinion in *Lucas v. United States,* 476 A.2d 1140 (1984).

In accordance with Rule 10(j) procedures, Levitt filed copies of the substitute statement with the Superior Court and with the Office of the United States Attorney. Shortly thereafter, Levitt asked to withdraw from the case, and the counsel now representing appellant was appointed to brief and argue the appeal. The government submitted no objections to the substitute statement of evidence and joined with appellant's new counsel in a stipulation for settlement and approval of the statement. Specifically, counsel for both parties stipulated that the statement was "accurate" and "sufficient to allow counsel to argue the case before the Court of Appeals." The trial judge who had presided at appellant's trial accepted the stipulation for settlement, approved the Rule 10(j) statement, and ordered its inclusion in the record on appeal.

The substitute statement of evidence is approximately two and one-half double-spaced pages long. It briefly summarizes: (1) the direct testimony of each of the three witnesses who appeared at trial and the cross-examination of one of the witnesses; (2) the documentary evidence presented by both the government and the defense; and (3) the closing arguments for both sides. There is no reference to the cross-examination of two of the witnesses and no summary of the trial court's instructions to the jury.

The statement indicates that the government called two witnesses at trial. First, appellant's estranged husband testified on direct examination that when he returned home on March 6, 1979, appellant approached him outside his home and pointed a pistol at him. He further testified on direct that, as he ran away from appellant, she fired a shot but he was not hit. The government called its second witness in an effort to corroborate this story. This witness testified that he was in the vicinity of the alleged assault on the date and at the time in question, and that he heard "what might have been the sounds of shots." The statement reflects that, on cross-exam-

ination, this witness admitted that the noises could have been caused by sources other than a gun. In addition to these two witnesses, the government submitted documentary evidence which established that, although appellant possessed a Maryland license for a pistol, she was not licensed to carry a pistol in the District of Columbia.

After the trial court denied appellant's request for a judgment of acquittal, appellant testified on her own behalf. According to the substitute statement, she told the court that she had been living in Maryland since separating from her husband. She returned to the family home in the District of Columbia on March 6, 1979, to speak with her husband about his failure to make child support payments. The statement indicates appellant admitted that she brought a pistol with her from Maryland and that she took that pistol from her purse and pointed it at her husband. She denied, however, that she fired the gun at her husband.

Appellant further testified that her husband had become violent with her on many occasions in the past. Fearing that a confrontation over child support might bring out these tendencies anew, she brought the pistol with her for the purpose of self-defense. She added that, after a brief conversation, her husband attempted to assault her and that it was this attack that provoked her to produce the pistol and point it at him. The defense also submitted documentary evidence to establish that the property on which this confrontation occurred was owned by the appellant and her husband as tenants by the entirety.

## II. THE RIGHT TO A TRIAL RECORD SUFFICIENT TO PERMIT MEANINGFUL APPELLATE REVIEW

■ In all but the most minor of criminal matters, a defendant convicted of a crime in the Superior Court is entitled to have this court review that conviction. D.C.Code § 11–721(b) & (c) (1981). In order to make this court's review meaningful, the Superior Court is required to keep a

simultaneous, verbatim record of all trial court proceedings. Super.Ct.Crim.R. 36–I(a). Moreover, a verbatim transcript of pertinent portions of the trial must be included in the record on appeal. D.C.App.R. 10(c), 23(b). These court rules accordingly confer on a criminal defendant a right to have all trial court proceedings recorded and to have a verbatim transcript prepared and made available to the defendant and this court, to the extent necessary to facilitate an appeal.[2]

Although there is no indication that appellant was denied the right to have her trial simultaneously recorded, she has been denied the opportunity to review a transcript of her trial and to place a transcript before this court. The government, how-ever, urges this court not to adopt a *per se* rule requiring reversal in all cases where the appellant is not able to make use of a transcript on appeal. It contends that the supplemented record in this case is sufficient to assure the court that no reversible error occurred at trial, and thus argues that the lack of a transcript should be treated as harmless error.

■ There is precedent in this jurisdiction cautioning against the affirmance of convictions on harmless error grounds in cases where an important portion of the transcript is not available on appeal. *United States v. Workcuff*, 137 U.S.App.D.C. 263, 264–65, 422 F.2d 700, 701–02 (1970) (per curiam).[3] In *Workcuff*, the trial judge

---

2. The right described here is distinguishable from the right of an indigent defendant to have a transcript of relevant portions of the trial prepared at government expense, in cases where the government is physically capable of producing a transcript and a nonindigent would be permitted to pay for one. *See* D.C.App.R. 23(b); *Gaskins v. United States*, 265 A.2d 589, 590–91 (D.C.1970). An indigent's right to a free transcript is based on equal protection considerations, *id.; see Draper v. Washington*, 372 U.S. 487, 497–99, 83 S.Ct. 774, 779–780, 9 L.Ed.2d 899 (1963), and springs from a requirement that an indigent criminal defendant be given an opportunity to obtain appellate review of his or her conviction "as adequate and effective as that ... guarantee[d] to nonindigents." *Draper, supra*, 372 U.S. at 499, 83 S.Ct. at 781. While *Draper* and *Gaskins* require the government to provide an indigent with a trial record equivalent to that available to a nonindigent, these cases do not establish any minimum standards for the type of record that must be provided to all defendants.

The right at issue in *Draper* and *Gaskins* is therefore distinct from the right asserted by appellant. Appellant does not claim that she was denied access to her transcript because of her inability to pay for it, or for any other reason related to her indigent status. Rather, she contends that the record on review in this case falls below the level of completeness and reliability required by the court rules in this jurisdiction—a level required in all criminal appeals, irrespective of whether the appellant or the government bears the expense of preparing the trial transcript. Although the policies and standards discussed in *Draper, Gaskins,* and other cases involving indigents' rights to equal treatment may provide useful guidance to our decision, they do not directly control the issue now before the court.

3. *Workcuff, supra,* along with the other federal cases cited in this opinion, bases its recognition of a right to have a verbatim record kept during trial and made available on appeal on a provision of the federal Court Reporter Act. This Act, which first required the presence of court reporters at federal district court proceedings in 1944, Pub.L. No. 78–222, 58 Stat. 5 (1944), was later codified at 28 U.S.C. § 753, Pub.L. 80–773, 62 Stat. 921 (1948). Today, it requires that "[e]ach session of the court and every other proceeding designated by rule or order of the court ... shall be recorded verbatim ... [including] all proceedings in criminal cases had in open court." 28 U.S.C. § 753(b) (1982). Although a strictly literal reading of this statute requires only that a record of court proceedings be made at the time of trial, it has been recognized that the purpose of the statute is "to make available to litigants, their attorneys, and the court when needed an accurate record of the proceedings, to remove uncertainty and speculation and to protect the rights of litigants." *United States v. Robinson*, 148 U.S.App.D.C. 140, 147, 459 F.2d 1164, 1171 (1972) (per curiam) (footnote omitted). Thus, 28 U.S.C. § 753(b) requires not only that a verbatim record be kept during trial, but also that a transcript be made available on appeal. *Id.; see Hardy v. United States*, 375 U.S. 277, 279, 84 S.Ct. 424, 426, 11 L.Ed.2d 331 (1964).

The wording of 28 U.S.C. § 753(b) is very similar to that of Super.Ct.Crim.R. 36–I(a). Moreover, a statutory authorization for appointing and employing reporters as "full-time employees of the courts" is provided by D.C.Code § 11–1727 (1981). We read Super.Ct.Crim.R. 36–I(a), in conjunction with D.C.App.R. 10(c) and 23(b), to create a right to a transcript on appeal coextensive with the right recognized by

failed to have a court reporter present when he interrupted the jury's deliberations and gave a supplementary jury instruction. The court of appeals, noting that the supplementary instruction was a "crucial stage of the trial," *id.* at 265, 422 F.2d at 702, refused to apply the harmless error rule. Although the appellant did not proffer any specific error related to the instruction, the conviction was reversed for want of a transcript of the trial judge's supplemental charge. *Id.*

The court in *Workcuff* pointed to two impediments that result from the unavailability of a transcript on appeal. First, "the absence of a complete and accurate transcript impairs the ability of appellate counsel to protect his client's basic rights." *Id.*

> Recollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript.

*Id.* (quoting Boskey, *The Right to Counsel in Appellate Proceedings*, 45 MINN.L.REV. 783, 793 (1961)).[4] These difficulties are "greatly exacerbated when ... the attorney representing the appellant is different from the counsel who represented him at trial." *Id.* Indeed, " '[t]he right to notice "plain errors or defects" is illusory if no transcript is available to one whose lawyer on appeal enters the case after the trial is ended.' " *Id.* (quoting *Hardy v. United States*, 375 U.S. 277, 280, 84 S.Ct. 424, 427, 11 L.Ed.2d 331 (1964)).

Second, the task of an appellate court becomes much more difficult—and may become impossible—when review is based on the *post hoc* reports of counsel, rather than on a transcript that reflects a contemporaneous account of the trial proceedings.

> It is difficult enough in normal circumstances to appraise the propriety of the trial court's various actions on the basis of a cold printed record; when that record is replaced by the incomplete hearsay of one of the parties, our review is turned into an exercise in creative imagination.

*Id.* The lack of a transcript therefore interferes with this court's assigned duty to rule on the existence and the prejudicial nature of errors raised at trial, and to address previously unchallenged defects in the trial court proceedings which prejudice the substantial rights of the appellant.

Despite these significant concerns, the federal courts have uniformly refused to adopt a rule that renders every failure to provide a complete transcript on appeal *per se* reversible error. *E.g., United States v. Piascik*, 559 F.2d 545, 548 (9th Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978); *United States v. Alfonso*, 552 F.2d 605, 620 (5th Cir.), *cert. denied*, 434 U.S. 857, 98 S.Ct. 179, 54 L.Ed.2d 129, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977); *United States v. Robinson*, 148 U.S.App.D.C. 140, 147, 459 F.2d 1164, 1171 (1972) (per curiam); *see generally* 3 WRIGHT, FEDERAL PRACTICE AND PROCEDURE, FEDERAL RULES OF CRIMINAL PROCEDURE § 556, at 313 (2d ed. 1982); Annot. 12 A.L.R.FED. 584, 590–92 (1972). Instead, they have been willing to permit convictions to stand in cases where "a fair review upon appeal has not been frustrated," *Robinson, supra*, 148 U.S.App.D.C. at 147, 459 F.2d at 1171, and the appellate court is able to conclude "that no substantial rights of the appellant have been adversely [a]ffected by the omissions from the transcript." *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977).

the federal courts. Because we base our recognition of this right on the court rules of this jurisdiction, we do not reach any issues as to the type of record on appeal that is mandated by the constitution. *See Tate v. United States*, 123 U.S.App.D.C. 261, 270–71, 359 F.2d 245, 254–55 (1966).

**4.** *See Hardy v. United States*, 375 U.S. 277, 288, 84 S.Ct. 424, 431, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring) ("As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript.").

As a predicate to discussing whether the absence of a trial transcript in this case was prejudicial, we must examine the methods of supplementing the record on appeal as a means of mitigating the negative effects of a missing or incomplete transcript.

## III. D.C.App.R. 10(j): The Use Of a Substitute Statement of Evidence and Proceedings to Supplement an Incomplete Record on Appeal

■ In both criminal and civil appeals, the appellant bears the burden of presenting this court with a record sufficient to show that error occurred at trial. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982); *see In re Gregory*, 387 A.2d 720, 723 (D.C.1978); *Dulles v. Dulles*, 302 A.2d 59, 60 (D.C.1973) (per curiam); *United States v. Mills*, 597 F.2d 693, 698 (9th Cir. 1979). This burden of perfecting the record is ordinarily met by filing pertinent portions of a verbatim trial transcript. D.C.App.R. 10(c)–(g). The rules of this court do, however, permit supplementation of—or substitution for—a verbatim trial transcript in three situations: (1) where some portion of the verbatim transcript is physically unavailable, either because a proceeding was not recorded or because the record was lost, stolen, or otherwise rendered impossible to transcribe, D.C.

App.R. 10(j); (2) where both parties agree to submit a joint statement of the facts essential to a review of the issues presented on appeal, in lieu of filing the transcript, D.C.App.R. 10(k); and (3) where the transcript is inaccurate in some respect and changes or additions are necessary to make the record conform to the truth, D.C. App.R. 10(*l*).[5]

Because this case reflects the first situation—it was impossible to produce a transcript of appellant's trial—this court properly remanded the case and ordered preparation of a statement of evidence and proceedings pursuant to D.C.App.R. 10(j).[6] Rule 10(j), like its analogue in the Federal Rules of Appellate Procedure, Fed.R.App.P. 10(c), prescribes a three-step process for supplementing the record on review.

■ First, "the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection." D.C.App.R. 10(j). The fact that the language used in this provision is permissive does not mean that the appellant is completely free to refuse to prepare a substitute statement. To the contrary, the appellant has the option either to prepare a substitute statement or to forfeit any claim that he or she has been

5. The Federal Rules of Appellate Procedure contain three parallel provisions governing the supplementation of the record on appeal. Fed.R.App.P. 10(c) (Statement of the Evidence or Proceedings When No Report Was Made or When Transcript is Unavailable); Fed.R.App.P. 10(d) (Agreed Statement as the Record on Appeal); and Fed.R.App.P. 10(e) (Correction or Modification of the Record). In light of the striking similarities between this court's rules and the federal rules in this area, we will look to federal case law for guidance in interpreting D.C.App.R. 10(j)–(*l*).

6. D.C.App.R. 10(j) provides:

STATEMENT OF THE EVIDENCE OR PROCEEDINGS. In lieu of the reporter's transcript, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall include only such portion of the proceedings and evidence as is necessary fully and clearly to prevent the rulings of

the trial court in which error is claimed. The testimony of witnesses shall be stated in narrative form, except that if either party desires it, and the trial court so directs or approves, any part of the testimony shall be stated in question and answer form. If error is claimed in the court's charge to the jury, the entire charge or its substance shall be included in the statement. The statement shall be filed with the Clerk of the Superior Court within 10 days after filing of the notice of appeal and a copy served upon the appellee, who may file objections or propose amendments thereto within 10 days after service of appellant's statement. Appellee shall cause a copy of the objections or proposed amendments to be served upon appellant. Thereupon the statement and any objections or proposed amendments shall be submitted to the Superior Court for settlement and approval within 10 days and as settled and approved shall be included by the Clerk of the Superior Court in the record on appeal.

prejudiced by the absence of a transcript. When an appellant refuses to make reasonable efforts to prepare a 10(j) statement from the best available means, this court will not entertain a claim that the record on appeal is insufficient to permit meaningful review. *Herndon v. City of Massillon,* 638 F.2d 963, 965 (6th Cir.1981) (per curiam) ("a new trial is not appropriate where the lack of a record is the only error charged and where the appellant made no effort to reconstruct the missing record nor to give any cause for that failing"); *see United States v. First National Bank of Mitchell,* 691 F.2d 386, 387 (8th Cir.1982) (per curiam); *see generally* 9 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 210.06[1] (1983).[7] Moreover, in cases where there is an incomplete transcript and appellant claims that a specific trial court error merits reversal, this court will not consider the substance of the appellant's representations about the alleged error, unless the transcript supports those representations or the appellant has made efforts to supplement the record pursuant to Rule 10(j). *See Cobb, supra,* 453 A.2d at 111–12; *United States v. Beliard,* 618 F.2d 886, 888 (1st Cir.1980); *Mills, supra,* 597 F.2d at 698.[8]

■ Second, once the appellant has formulated a proposed statement, the appellee "may file objections or propose amendments" to it. D.C.App.R. 10(j). Al-

though the primary duty for preparing the 10(j) statement rests squarely with the appellant, "an appellee also has a duty to ensure an adequate record ... and may not abdicate this responsibility." *Dulles, supra,* 302 A.2d at 60; *see Voight & McMakin Air Conditioning v. Property Redevelopment Corp.,* 276 A.2d 239, 241 n. 2 (D.C.1971). When an appellee fails to object or add to the appellant's proposed statement, he or she will be deemed to have approved the statement as an accurate reconstruction of the relevant portions of the trial, drawn from the best available sources.

■ Finally, the statement must be "settled and approved" by the trial court. "[S]ince ... in the final analysis approval of the Statement of Proceedings and Evidence lies with the trial court, it is that court's ultimate responsibility to bring about an adequate record for review." *Dulles, supra,* 302 A.2d at 60; *see United States v. Perkins,* 162 U.S.App.D.C. 321, 325, 498 F.2d 1054, 1058 (1973). The trial court must resolve any dispute between the parties as to the contents of the statement. Moreover, if the trial court is not satisfied that the agreed upon statement is accurate or as complete as possible, the court should take appropriate measures to modify it.[9] In accomplishing these tasks, the trial court may rely on its own recollection or

7. *But see United States v. Renton,* 700 F.2d 154, 158–59 (5th Cir.1983) (appellant's failure to object to "gaps" in trial transcript and to propose amendments to supplement the record is "significant," but not conclusive, factor in appellate court's decision that no prejudice resulted from missing portions of transcript).

8. In contrast with a situation in which an appellant simply claims the record is inadequate to permit meaningful review, but nevertheless refuses to supplement the record, *see Herndon, supra,* when an appellant argues that a specific error in the trial warrants reversal, the failure to attempt to supplement an incomplete record will not necessarily lead to an affirmance of the trial court judgment. *See Calhoun v. United States,* 384 F.2d 180, 185 (5th Cir.1967) (where incomplete record is sufficient to convince appellate court that prejudicial error occurred at

trial, reversal is appropriate despite appellant's failure to comply with procedures for supplementing record on appeal); *see also United States v. Selva,* 546 F.2d 1173, 1174 (5th Cir. 1977) (where no effort has yet been made to supplement the record, appellate court may remand the case to the trial court "to conduct an appropriate hearing ... for the purpose of supplementing the record," rather than issuing a decision on the merits).

9. *Cf. United States v. Sevilla,* 174 F.2d 879 (2d Cir.1949) (once appellant has submitted a substitute statement of the evidence and events at the trial, "[i]t 'will then become the duty of the [trial] judge to assist in amplifying, correcting and perfecting' that statement from 'the best sources available' to him" (quoting *Miller v. United States,* 317 U.S. 192, 198–200, 63 S.Ct. 187, 190–191, 87 L.Ed. 179 (1942)).

notes from trial, *see United States v. Krynicki*, 689 F.2d 289, 291 n. 3 (1st Cir. 1982); *United States v. Dean*, 667 F.2d 729, 731 n. 3 (8th Cir.), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982), or may conduct hearings and consult with counsel and other sources. *See, e.g., Dulles, supra,* 302 A.2d at 60; *United States v. Selva*, 546 F.2d 1173, 1174 (5th Cir.1977); *Robinson, supra,* 148 U.S.App. D.C. at 146 n. 14, 459 F.2d at 1170 n. 14.

■ After settling the statement to the best of its ability, the trial court then must decide whether to approve the statement and certify it as part of the record on appeal. If, in a criminal case, the trial court is unable to reconcile a material disagreement between the parties or to certify that the statement is an accurate reconstruction of the events of trial, sufficient to permit appellate review, the court should set aside the judgment and order a new trial. *Cross v. District of Columbia*, 292 A.2d 794, 795 (D.C.1972) (per curiam); *see United States v. Selva, supra,* 546 F.2d at 1174–75 (the trial judge "shall have the authority to grant a new trial if he deems it to be in the interests of justice"). To the extent the trial court is satisfied that the Rule 10(j) statement reflects an accurate reconstruction prepared by the best available means, the statement will be added to the record on appeal.

We accept the trial judge's certification of the 10(j) statement in this case as a determination that the statement was prepared by the best available means and is as complete as possible. Although the appellant was not able to participate in the preparation of the statement, there is no indication in the record, and no reason to believe, that this in any way was appellant's fault. Appellant completed her obligations with the probation department more than a year before the need for a 10(j) statement was

discovered, and more than two and one-half years before preparation of the statement was begun. We would, of course, have a different case if appellant's failure to participate in reconstructing her trial record resulted from an unwillingness to cooperate in such an endeavor. Under the circumstances of this case, we accept the 10(j) statement as the best available supplementation of the record.[10]

## IV. INADEQUACY OF THE SUPPLEMENTED RECORD ON APPEAL IN THIS CASE

■ The fact that the trial court has approved a Rule 10(j) statement and certified it as part of the record on appeal does not end our inquiry into whether the record is amenable to review. The lack of a complete transcript is not always curable by efforts to reconstruct the record under Rule 10(j). *See Herndon, supra,* 638 F.2d at 965; *United States v. Knox*, 456 F.2d 1024, 1025 (8th Cir.1972) (per curiam); *see generally* 9 J. MOORE, *supra*, at ¶ 210.06. We therefore must examine the supplemented record to determine whether it is adequate to permit appellant a meaningful opportunity to locate and challenge errors at trial, and to permit this court "to exclude the possibility of any error other than harmless error." *United States v. Upshaw*, 448 F.2d 1218, 1224 (5th Cir.1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972).

■ The government argues that the 10(j) statement in this case indicates that appellant, in her direct testimony, admitted to all of the essential elements of the crime of carrying a pistol without a license. It contends that, because appellant is unable to proffer any specific trial court error that would not be considered harmless when viewed in light of her admission, the 10(j) statement is sufficient to warrant affirm-

10. At oral argument, counsel for appellant informed the court that she had just recently located appellant. Although this raises the possibility that we could remand this case yet again to further develop the 10(j) statement, we decline to do so. Over four and one-half years

have passed since appellant's trial was completed, and we do not believe that the interests of justice would be served by attempting a second reconstruction of the events of trial at this point.

ing the conviction. We disagree. Although an appellant's inability to proffer specific prejudicial errors—which allegedly occurred at trial but which are not adequately reflected in the supplemented record—is an important factor in evaluating whether the lack of a verbatim transcript is prejudicial,[11] it is not conclusive. *E.g., Workcuff, supra,* 137 U.S.App.D.C. at 264–65, 422 F.2d at 701–02. Several factors combine to convince us that the supplemented record now before this court is inadequate.

▮▮▮▮ First, unlike the typical case in which only a portion of the trial transcript is unavailable,[12] neither appellant nor this court has had access to a verbatim transcript of any of the trial proceedings. As a general matter, the problems associated with a less-than-complete verbatim transcript—especially the inability to notice plain error—will be greater when a substantial portion of the transcript is alto-gether unavailable. Although the loss of an entire trial transcript will not necessitate a new trial in every instance, it does magnify the need for a complete and accurate substitute statement of the evidence and increases the likelihood that meaningful appellate review will be impossible. *E.g., Knox, supra,* 456 F.2d at 1025.

Second, despite our acceptance of the 10(j) statement as the most complete reconstruction possible at this time, it is at best a fragmentary account of appellant's trial. There is no mention of either party's opening statements and only a cursory summary of the closing arguments. Moreover, we are left without any insight into the cross-examination of the complaining witness or of appellant—two of the three witnesses at trial—and there is no record of the instructions given to the jury.[13] Of particular significance here, the problems of completeness and reliability normally associated with a Rule 10(j) statement[14] are

**11.** *See, e.g., United States v. Bankston,* 603 F.2d 528, 535 (5th Cir.1979) (refusing to give weight to appellant's "vague allegations of prejudice"); *United States v. Snead,* 527 F.2d 590, 591 (4th Cir.1975) (appellate counsel's inability to suggest any prejudicial errors which do not appear in the record on appeal supports a conclusion that absence of a portion of the transcript is not prejudicial).

**12.** *E.g., United States v. Colmenares-Hernandez,* 659 F.2d 39, 43 (5th Cir.) (testimony of two government rebuttal witnesses missing), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 116 (1981); *Bankston, supra* note 10, 603 F.2d at 534 (no transcript of defense objections to jury instructions and trial judge's rulings thereon); *Robinson, supra,* 148 U.S.App.D.C. at 146, 459 F.2d at 1170 (no transcript of bench conferences from first day of trial); *Workcuff, supra,* 137 U.S.App.D.C. at 264, 422 F.2d at 701 (supplementary jury instruction not recorded); *Upshaw, supra,* 448 F.2d at 1222 (opening and closing arguments of counsel not in record).

**13.** This lack of detail is not surprising here. The need for a substitute statement of evidence was not discovered until over two years after trial, and it was another one and one-half years before any attempt was made to investigate and memorialize the participants' recollections of the proceedings. Under these circumstances, memories are likely to be incomplete and possibly unreliable. A lengthy delay in the review

process does not automatically taint efforts to reconstruct the record, thereby preventing effective review, *United States v. Renton,* 700 F.2d 154, 158 (5th Cir.1983), but a significant lapse of time between the trial and the preparation of a 10(j) statement will weigh against reliance on the statement.

The scheduling guidelines in Rule 10(j) make clear the importance of preparing a substitute statement of evidence in a timely fashion. Rule 10(j) contemplates that in the ordinary case a substitute statement will be prepared, submitted, settled, and approved within thirty days of the filing of a notice of appeal. Although the timing requirements of Rule 10(j) are directory and may be extended upon order of this court, D.C.App.R. 10(m)—an adjustment that will frequently be necessary in cases involving the loss or destruction of transcript notes after trial—the rule nonetheless recognizes the desirability of having substitute statements prepared at a time when memories are still fresh.

**14.** *See Cobb, supra,* 453 A.2d at 111 ("A statement of proceedings and evidence, based as it usually is on fallible human recollection or on sketchy notes, hastily taken … has obvious shortcomings"); *Tate v. United States,* 123 U.S. App.D.C. 261, 271, 359 F.2d 245, 255 (1966) (review based on a substitute statement of evidence and proceedings "has inherent disadvantages in terms of providing an accurate record of proceedings below").

compounded by the fact that appellant—through no fault of her own—was not able to assist in preparing the 10(j) statement. This factor is especially important because the government's harmless error analysis relies heavily on the summary of appellant's direct testimony. We are reluctant to find harmless error based on an account of appellant's testimony at trial which appellant has not had an opportunity to supplement or contest.

Finally, the difficulties discussed above are "greatly exacerbated" by the fact that appellant's present counsel did not participate in the trial. *Workcuff, supra,* 137 U.S.App.D.C. at 265, 422 F.2d at 702; *cf. Gaskins v. United States,* 265 A.2d 589, 592–93 (D.C.1970). The increased likelihood that prejudice will result when a newly-retained appellate counsel is forced to proceed with a less-than-complete transcript of the trial court proceedings is well-recognized.[15] An appellate counsel who was not present at trial and does not have access to a transcript of the trial court proceedings will be forced to piece together the events of trial, relying solely on the recollections of others. This will leave counsel at a distinct disadvantage both in uncovering trial court errors and in developing a substitute statement of evidence sufficient to demonstrate that such errors merit reversal.

We are convinced that under the circumstances of this case, the supplemental record on appeal lacks the completeness and the reliability necessary to protect appellant's right to pursue an appeal and this court's obligation to engage in meaningful review.

*Reversed.*

---

**15.** Indeed, the federal Court of Appeals for the Fifth Circuit has adopted a "different rule" to govern cases involving new counsel on appeal:

When ... a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal. [Citations omitted] The wisdom of this rule is apparent. When a defendant is represented on appeal by the same attorney who defended him at trial,

the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings.

*Selva, supra,* 559 F.2d at 1306 (footnote omitted); *see Renton, supra,* 700 F.2d at 157. We need not adopt such a rigidly bifurcated analysis here, but do reaffirm our greater willingness to conclude that the lack of a complete transcript is prejudicial when counsel appearing before this court did not participate at trial.