Raymond W. DAVID, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CM–1741.

District of Columbia Court of Appeals.

Decided Sept. 5, 2008.*

Submitted Sept. 25, 2007.

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published by the court *sua sponte*.

Mattie P. Johnson filed a brief for appellant.

Jeffrey A. Taylor, United States Attorney, with whom Roy W. McLeese III and David S. Johnson, Assistant United States Attorneys, submitted a brief for appellee.

Before RUIZ and KRAMER, Associate Judges, and NEWMAN, Senior Judge.

RUIZ, Associate Judge:

Appellant appeals from a conviction of simple assault (D.C.Code § 22–504 (Supp. 1999)) entered by the trial court after a one-day bench trial. Due to an equipment error, certain parts of the trial were not recorded: the arguments and ruling on appellant's motion for judgment of acquittal, and the direct testimony and cross-examination of appellant's only witness, who was also the complainant (the redirect and recross examinations were transcribed). Although the trial court reconstructed the missing portion of the transcript in the form of a Settled and Approved Statement of Evidence, pursuant to D.C.App. R. 10(d), appellant argues that his conviction should be vacated because the state of the record does not allow appellate counsel (who was not trial counsel) to meaningfully review the trial proceeding to identify possible issues for appeal.

### Factual Summary

On the night of September 2, 1999, an officer from the Metropolitan Police Department heard a woman screaming from an apartment building while he was standing outside the building. The officer saw a woman running through the lobby to the security desk and appellant following after her. Upon seeing the officer, appellant slowed down and opened the door to let the officer in the building.

The officer recognized the woman, Ms. Sahra Ali David, from responding to a previous incident. Ms. David was crying and appeared to be "excited . . . upset and scared." She was shaking, barefooted, and had blood around her toe. The trial court admitted (over defense objection) as an excited utterance the complainant's out-of-court statement to the officer that appellant had stepped on her toes with his boots when she tried to leave the apartment and punched her in the stomach, and that she was pregnant. Ms. David refused medical treatment.

After the officer's testimony, the government closed its case, and defense counsel moved for judgment of acquittal. It was at this point that the recording stopped, apparently due to an equipment malfunction.

According to the Settled and Approved Statement certified by the trial court,[1] Ms. David, who was five-months pregnant at the time of trial, testified on direct examination that appellant did not assault her, but that she "made up a story" that appellant had punched her in the stomach because "she wanted to hurt him because he was leaving her." She had told this made-up story to the police officer at the scene, to the court at a hearing for a temporary protection order (TPO) against appellant the following day, and to her friend Marcy Rinker some time later.

Ms. David explained during cross-examination that she was crying because she had

---

1. In 2004 appellate counsel asked this court to stay the direct appeal pending preparation of a statement as required by D.C.App. R. 10(d). In preparing the certified Settled and Approved Statement, the trial court consid-ered appellant's motion, the government's op-position, and appellant's reply. Except for the trial court's Statement, none of these doc-uments is part of the record on appeal.

bumped her foot while running barefoot in the apartment lobby. She denied telling the police that appellant had choked her or punched her in the arm. She also denied that appellant told her how to testify. She told the court that she loved her husband, and was aware that appellant "could go to jail if found guilty ... and she no longer wanted him to go to jail."

The recording resumed as defense counsel recalled Ms. David to ask her one more question on redirect. Ms. David testified that she had been drinking on the night of the incident, but on recross-examination said that she was not drunk. Ms. David testified that the police officer told her about obtaining a TPO. Appellant did not testify and the defense closed its case.

The government then asked the trial court to take judicial notice of the TPO entered against appellant. Over defense objection, the court admitted Ms. David's testimony at the TPO hearing both for impeachment purposes and as substantive evidence as prior sworn inconsistent testimony under D.C.Code § 14–102(b)(1) (Supp.1999).[2] In their closing arguments to the court, counsel referred to Ms. David's testimony, including portions not captured by the recording.

### Analysis

■ The trial court is required to keep a simultaneous, verbatim record of all of its proceedings. *See* Super. Ct.Crim. R. 36–I(a). Relevant portions of the transcript must be included in the appeal record to allow for meaningful review by this court. *See Cole v. United States,* 478 A.2d 277, 281 (D.C.1984). An incomplete transcript compromises appellate counsel's ability to advocate on behalf of her client, and "interferes with this court's assigned duty to rule on the existence and the prej-

udicial nature of errors raised at trial, and to address previously unchallenged defects in the trial court proceedings which prejudice the substantial rights of the appellant." *Id.* at 282 (noting that "the task of an appellate court becomes much more difficult—and may become impossible—when review is based on the *post hoc* reports of counsel, rather than on a transcript that reflects a contemporaneous account of the trial proceedings"); *see United States v. Workcuff,* 137 U.S.App. D.C. 263, 265, 422 F.2d 700, 702 (1970). "The problem is greatly exacerbated when ... the attorney representing the appellant is different from the counsel who represented him at trial," *Workcuff,* 137 U.S.App. D.C. at 265, 422 F.2d at 702, in part because "[t]he right to notice 'plain errors or defects' is illusory if no transcript is available to one whose lawyer on appeal enters the case after the trial is ended." *Hardy v. United States,* 375 U.S. 277, 280, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964).

■ But not every instance of missing transcript is a *per se* reversible error as long as "a fair review upon appeal has not been frustrated, and the appellate court is able to conclude that no substantial rights of the appellant have been adversely affected by the omissions from the transcript." *Cole,* 478 A.2d at 282 (citations omitted) (internal quotation marks omitted) (quoting *United States v. Robinson,* 148 U.S.App. D.C. 140, 147, 459 F.2d 1164, 1171 (1972) (per curiam); *United States v. Selva,* 559 F.2d 1303, 1306 (5th Cir.1977))

■ Under our appellate rules, a substitute statement approved by the trial court may be submitted in lieu of the transcript. *See* D.C.App. R. 10(d). Indeed, an appellant "forfeit[s] any claim that he ... has been prejudiced by the absence of a tran-

---

2. Ms. David testified in the TPO hearing that on the previous night, appellant "kick[ed] me, kick[ed] my toes ... grabbed me by my shoulder then ... shook me."

script [when he] refuses to make reasonable efforts to prepare a ... statement." *Cole,* 478 A.2d at 282.

When there is a Rule 10 statement instead of the transcript in the appeal record, we examine the statement to determine "whether it is adequate to permit appellant a meaningful opportunity to locate and challenge errors at trial, and to permit this court 'to exclude the possibility of any error other than harmless error.'" *Id.* at 285 (quoting *United States v. Upshaw,* 448 F.2d 1218, 1224 (5th Cir.1971)). The overall concern is to determine "whether the particular omission from the transcript *prejudices* [appellant's] right to appeal...." *Lucas v. United States,* 476 A.2d 1140, 1142 (D.C.1984).

> [A]nd this prejudice may occur in two different ways: *first,* when a specific claim of error is raised and it is impossible for the appellate court to determine from the record whether or not prejudicial error occurred; or *second,* although no specific error is claimed, the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred.

*Id.* (citation omitted).

Here, the missing portion of the transcript is not insubstantial because it covered the arguments and ruling on appellant's motion for judgment of acquittal, and almost the entire testimony of Ms. David, who testified for the defense and recanted what she had told the officer on the scene and during the TPO hearing. Ms. David testified at trial that what had really happened that night was she and appellant had gotten into an argument, she ran out of the apartment and bumped her foot against a door, but told the police that appellant had hit her to get him in trouble. She admitted to testifying at the TPO hearing that appellant had assaulted her-

contrary to her trial testimony, but consistent with what she had reported to the police that night.

Although we recognize that appellate counsel is at some disadvantage because she did not serve as trial counsel, we conclude that the conviction must be affirmed because notwithstanding the gaps in the recording of the trial, the trial transcript that exists, as supplemented by the trial court's certified Settled and Approved Statement, suffice for this court to conduct a meaningful review of the trial proceedings. Appellant does not allege that a specific error occurred during the part of the proceeding that was not recorded, or that the absence of the transcript hampers our duty to conduct a meaningful review of the record. Appellant argues instead that he is precluded from mounting an effective appeal because there *might* have been some error that would have been captured in the missing portions of the transcript. From the transcript that does exist, and the trial court's Statement, we think that is highly improbable.

With respect to the trial court's denial of the motion for judgment of acquittal at the end of the government's case, we have the full transcript of the government's case-in-chief which relied exclusively on the officer's testimony. "Reversal of the trial court's denial of appellant's motion for judgment of acquittal is warranted 'only where there is no evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt.'" *Curington v. United States,* 621 A.2d 819, 824 (D.C.1993) (alteration in original) (quoting *Head v. United States,* 451 A.2d 615, 622 (D.C.1982)). The officer's testimony about what he observed and what Ms. David told him, and any inference in favor of the government from his testimony, more than sufficed to establish that appellant assault-

ed Ms. David. *See Timberlake v. United States*, 758 A.2d 978, 980–81 (D.C.2000) (" '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979))).

There is also no reason to doubt the basis for the trial court's final ruling, which was fully transcribed. The court explained its findings, including its assessment of the two witnesses' testimony. The trial court "credit[ed] the officer's testimony," because it was corroborated in part by Ms. David's own trial testimony, in which she admitted that she ran out of the apartment building that night and that her toe was bleeding.[3] The trial court found that the statement that Ms. David admitted having made to the officer immediately following the incident corroborated the officer's testimony of what had happened. The trial court also found that Ms. David's trial testimony, that appellant did not assault her and that her injuries were the result of an accident, was impeached by her earlier statements because "[t]he only different story . . . of any significant degree is in which [Ms. David] had described . . . was the story that she gave here in court. . . ." The transcript and Rule 10 Statement support this finding. Ms. David's story before trial was consistently that appellant had assaulted her: she had told this to the police officer on the night of the incident, to her friend after the

incident, and in sworn testimony to the court at the TPO hearing. In rejecting Ms. David's trial testimony recanting her initial accusation against appellant, the court found:

> She's clearly a liar. She lies. She definitely, in the [c]ourt's view, has given impeaching evidence. . . . In the [c]ourt's view, observing her demeanor and her testimony, observing the fact that in this case [at trial] she is five months pregnant by [appellant], she's in love with [appellant], she doesn't want to see him go to jail, it's clear motive more so for her to lie here in front of the [c]ourt and to recant her testimony. . . .

■ This court will not "substitute its judgment for that of the fact-finder when it comes to assessing the credibility of a witness . . . based on factors that can only be ascertained after observing the witness testify." *Robinson v. United States*, 928 A.2d 717, 727 (D.C.2007), *see also Bouknight v. United States*, 867 A.2d 245, 251 (D.C.2005) ("The determination of credibility is for the finder of fact, and is entitled to substantial deference."). In this case, the trial court's assessment that Ms. David's trial testimony was false is supported by the undisputed fact that Ms. David had given contrary sworn testimony at the TPO hearing the day after the charged assault. That sworn testimony also provided substantive evidence of the assault. *See* D.C.Code § 14–102(b)(1). The trial court's evidentiary rulings—which permitted the officer to testify about

---

3. The court considered—and rejected—defense counsel's argument that the officer had a motive to lie because he made sexual advances to Ms. David. Trial counsel repeatedly argued that the officer had made "sexual advances" because "I asked [Ms. David] if he made sexual advances towards her and she said, yes." The trial court summarily rejected this argument because "[counsel] led her into saying that anyway, because it was a leading question." The trial court found that "[T]he conduct she described clearly doesn't establish it as a sexual advance," because "[t]he only thing I heard the witness say is that he told her that she was a beautiful woman, she should . . . basically get out of this relationship. . . . He asked her if he wanted to take her out somewhere."

Ms. David's hearsay statements to him and admitted Ms. David's sworn statements at the TPO hearing as well as the transcript of the TPO hearing—are part of the record on appeal. Appellant has not challenged these rulings. Because the trial court's finding of guilt is based on its assessment of the credibility of the witnesses, to which we defer, and the existing record does not render clearly erroneous the trial court's credibility assessments, "[i]n the context of this *bench trial,* the mere possibility of prejudicial error arising during *the particular proceedings in this case* [that were not transcribed] is entirely too remote to warrant reversal." *Lucas,* 476 A.2d at 1143.

The judgment of the trial court is

*Affirmed.*