Darryl WOODARD, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–1134.

District of Columbia Court of Appeals.

Argued April 7, 2009.

Decided July 22, 2010.

Shilpa S. Satoskar, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Elizabeth Trosman, and Daniel Butler, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and KRAMER and THOMPSON, Associate Judges.

KRAMER, Associate Judge:

Appellant Darryl Woodard, who was convicted of conspiracy to commit assault with a dangerous weapon, argues that the trial court committed reversible error by allowing the prosecutor to improperly suggest in his rebuttal argument that two witnesses changed their testimony because they feared appellant. We hold that the

prosecutor's comments were improper as to one witness and that the trial court abused its discretion by allowing the comments. We conclude, however, that the comments did not constitute a Due Process violation and that the error was harmless.

## I. Factual Background

This case stems from the October 9, 2002, shooting of Michael Cary and Ebony Byrd, for which appellant and Edward McCoy were charged with conspiracy to assault another person with a firearm, assault with intent to kill while armed ("AWIKWA"), assault with a dangerous weapon ("ADW"), aggravated assault while armed ("AAWA"), destruction of property, carrying a pistol without a license ("CPWL"), possession of an unregistered firearm ("UF"), unlawful possession of ammunition ("UA"), and three counts of possession of a firearm during a crime of violence ("PFCOV"). Appellant and McCoy were tried in a jury trial before Judge Russell Canan in February 2003. The jury found appellant guilty of conspiracy and ADW and found McCoy guilty of conspiracy, two counts of ADW, AAWA, CPWL, UA, three counts of PFCOV, and misdemeanor destruction of property. Appellant and McCoy appealed to this court. We affirmed McCoy's convictions, but reversed appellant's convictions due to the erroneous introduction of his improperly obtained confession. *See McCoy v. United States*, 890 A.2d 204 (D.C.2006).

Thereafter, appellant was retried alone in a jury trial before Judge Harold Cushenberry. The following evidence was presented at that trial. On the night of March 1, 2002, Cary and Byrd went to a club with friends, where they encountered appellant, who was also with friends. A fight broke out between Cary and his friends and appellant and his friends,

which was broken up by club security personnel. Later, when the club closed, Cary and Byrd went to the parking lot and saw appellant get into a Volvo with three other men. Cary and Byrd got into Cary's car and began to drive home, but soon observed that the Volvo was following them. As Cary drove through the Third Street tunnel, a bullet entered the driver's side window of his car. The Volvo pulled alongside the driver's side, and Cary could see appellant in the passenger seat firing at him and another man firing out of the sunroof. Byrd, unlike Cary, testified that she saw appellant firing out of the sunroof.

Cary was hit by four bullets and continued to drive until he lost consciousness, at which point Byrd climbed over him into the driver's seat and drove to the hospital. At the hospital, Byrd told police that she knew the man she had seen shooting because his sister lives across the street from her.[1] Byrd was shown a photo array from which she identified appellant as the person she had seen shooting. Cary told the police that he knew the shooter as "DJ" and selected a photograph of appellant from a photo array.

At the 2003 trial, Cary and Byrd testified that they did not see appellant with a gun, though Cary testified that he saw McCoy shooting out of the sunroof. At the 2006 trial, both witnesses were impeached with their earlier testimony. When Cary was asked why he previously testified that he did not know if appellant shot him, he replied, "I don't know." When asked about her previous testimony, Byrd testified "I didn't want to tell you nothing because I felt threatened for my life so I didn't say—I was told not to say nothing. My mother told me don't say nothing."

---

1. Appellant's two sisters and Byrd live in the same apartment complex.

In defense counsel's closing argument, she noted that Byrd explained her previous testimony by saying, "that's what my mother told me, and I also felt threatened. We didn't hear anything to substantiate that. There was nothing with reference to the fact that she had been threatened. We submit to you that that just doesn't make sense." In the prosecutor's rebuttal argument, he explained the testimony of Cary and Byrd as follows:

> At [the first proceeding] . . . they held back information. And why did they do so? Well, they both gave you their explanations, and I'll leave it to that. But think about it. A court proceeding where they have to face the person that they're identifying as the shooter, the fact that they would hold back at that time. Use your common sense. You can understand what's going on here. You know what's going on.
>
> . . .
>
> But then, they come here, and finally they have gotten past those concerns; they have gotten past those reasons that they held back their testimony, and they told you what they had told the police from the beginning.

Defense counsel objected to this argument, but the trial court overruled the objection. The jury found appellant guilty of conspiracy.[2] This appeal followed.

## II. Legal Discussion

Appellant argues that the trial court committed reversible error by allowing the prosecutor to improperly suggest in closing argument that Cary and Byrd were afraid of him. He contends that these comments were error because they constituted both (1) an improper invocation of

witness fear and (2) a Due Process violation.

### A. Improper Invocation of Witness Fear

When comments by the prosecutor are allegedly improper, we review to determine whether the trial court abused its discretion or committed legal error by allowing the comments. *Irick v. United States*, 565 A.2d 26, 33 (D.C.1989).

> When reviewing a claim of improper prosecutorial argument, we must first determine whether the prosecutor's challenged comments were improper. If the court concludes that the comments were improper, reversal may or may not be warranted; the court must evaluate the prosecutor's challenged remarks in context rather than in isolation. Included in the court's calculus should be: [1.] the gravity of the [improper comments]; [2.] [their] relationship to the issue of guilt; [3.] the effect of any corrective action by the trial judge; and [4.] the strength of the government's case. Based on these considerations, the conviction should be reversed only if the defendant suffered substantial prejudice, and we must affirm if the error was harmless. As to harmlessness, our inquiry is whether we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error . . . .

*Najafi v. United States*, 886 A.2d 103, 107–08 (D.C.2005) (citations and internal quotation marks omitted). "Absent a factual basis for such a comment by the prosecutor, our case law has been strict in stating that suggestions of fear are forbidden." *Simpson v. United States*, 877 A.2d 1045,

---

**2.** The jury was unable to reach a unanimous verdict as to the ADW charge, and a mistrial

was declared as to that count.

1048 (D.C.2005) (citations omitted). Although the prosecutor did not explicitly say that Cary and Byrd were afraid of appellant, that was the clear implication from his comments.[3]

Because the prosecutor's rebuttal argument suggested that Byrd and Cary changed their story out of fear of appellant, we must examine whether there was a factual basis for such a suggestion of fear. Byrd testified that she told a different story at the first trial because she "felt threatened for [her] life." Although she did not specifically testify that she felt threatened by appellant, that was a reasonable inference from her testimony that she felt threatened and that she saw appellant shooting at her.[4] Byrd's testimony thus provided a sufficient factual basis for the prosecutor's argument. Cary, however, did not testify to any reason why he had changed his story. Accordingly, there was no factual basis for the suggestion that he lied at the first trial because he was afraid of appellant. The prosecutor's argument was thus improper as to Cary, and the trial court erred by allowing it. To determine whether reversal is warranted, we must balance "the gravity of the [impropriety], its direct relationship to the issue of innocence or guilt, and the effect of specific corrective instructions of the trial court, if any, against the weight of the evidence of appellant['s] guilt." *Murray, supra* note 4, 855 A.2d at 1134 (citations omitted).[5]

As in *Murray*, where we held that the prosecutor's improper invocation of fear in closing arguments did not warrant reversal, "the improprieties challenged here did not include attempts to elicit testimony about fear, but were limited to closing argument by the prosecutor...." *Id.* at 1134. Also, as in *Murray*, "the prosecutor's references to witness fear were based on something the jury might naturally have understood anyway: that witnesses to a violent crime subpoenaed to testify in court may continue to exhibit fear of those they believe were the perpetrators." *Id.* at 1135. Although there was not a sufficient factual basis for the prosecutor's comments in regard to Cary, the argument did not suggest that appellant did anything specific to threaten Cary nor did it point to any facts unsupported by the evidence. Additionally, the improper statements dealt with testimony regarding whether Cary had seen appellant shooting at him. Notably, whether appellant himself actually shot Cary and Byrd is immaterial to the crime for which he was convicted—conspiracy. While the evidence certainly is relevant, it is not necessary for a conspiracy conviction.

In any event, even without the prosecutor's improper statement, there was a great deal of evidence of appellant's guilt. While Cary and Byrd did not identify appellant as a shooter in the first trial, they did identify him as a shooter to the police and before the grand jury. Moreover, they had consistently testified that appellant was in the car with McCoy while McCoy shot at Cary and Byrd. Given the weight of the evidence, we conclude that the verdict was not substantially swayed by the prosecutor's improper suggestion

---

**3.** See *id.* at 1048 (given prosecutor's argument that witness may have initially lied because "[m]aybe he might have been a little afraid," "no possible source of [the witness'] fear other than [appellant] was readily inferable by the jury.").

**4.** See *Murray v. United States*, 855 A.2d 1126, 1132 (D.C.2004) (testimony that witness was kidnapped and beaten by appellants "supported a reasonable inference that [he] was still frightened of appellants, which could explain, at least partly, his reluctance as a witness and his evasive or shifting answers").

**5.** The trial court gave no corrective instructions.

that Cary changed his testimony because he feared appellant.

## B. Due Process

■ Appellant also argues that the prosecutor's argument improperly urged the jury to draw the inference that Cary was afraid to identify a shooter face-to-face. We know this suggestion to be false because Cary identified McCoy as one of the shooters during the 2003 trial, where McCoy was a co-defendant.[6] Appellant contends that this misleading prosecutorial argument constituted a Due Process violation.

■ "A conviction obtained through the use of false evidence, known to be false by the prosecutor, denies a defendant liberty without due process of law." *Bruce v. United States*, 617 A.2d 986, 992 (D.C. 1992) (citations omitted). A prosecutor's false or misleading statements during rebuttal arguments may rise to the level of a Due Process violation. *See United States v. Kojayan*, 8 F.3d 1315, 1324 (9th Cir. 1993). Here, the prosecutor pointed out that Cary had changed his testimony since the first trial, that it is difficult to identify a shooter face-to-face, and that Cary has "gotten past" the reasons why he withheld his testimony in the first trial. While the jury could infer that Cary was afraid to identify a shooter face-to-face, we do not believe that this was the clear implication from the prosecutor's comments.

The prosecutor's comments here are distinguishable from those held to be Due Process violations. Courts have generally found due process violations only where prosecutors made unambiguously false statements in closing argument or relied on false testimony.[7] In this case, there was no false testimony and the prosecutor's statements were not unambiguously false. At worst, the statements were misleading. The prosecutor did not say that Cary was afraid to identify any shooter face-to-face, but merely implied that the fear of identifying appellant face-to-face motivated him to change his story. Because the prosecutor did not knowingly make false statements or rely upon false testimony, there was no Due Process violation. Accordingly, we do not apply the standard of *Chapman v. California*[8] in assessing prejudice from the prosecutor's statements.

*Affirmed.*

■

6. Although the jury was aware that Cary had testified at the first trial that McCoy was a shooter, they were not aware that his identification of McCoy was made face-to-face because McCoy was a co-defendant in that trial.

7. *See, e.g., Jenkins v. Artuz*, 294 F.3d 284, 289 (2d Cir.2002) (government witness falsely denied entering into a plea agreement with the government during his testimony and prosecutor reinforced this false testimony on redirect and in her closing argument); *Kojayan, supra*, 8 F.3d at 1318 (prosecutor made "simply false" statement in rebuttal argument that the government could not have called the defendant's accomplice as a witness when, in fact, the government had entered into a cooperation agreement with the accomplice, who had promised to testify truthfully at any trial at which the government requested his testimony); *DeMarco v. United States*, 928 F.2d 1074, 1075 (11th Cir.1991) (government witness falsely testified that he had not made a deal with the government and "[i]n her jury argument the prosecutor adopted and emphasized [the witness'] perjured testimony"); *United States v. Sutton*, 542 F.2d 1239, 1241 (4th Cir.1976) (although an FBI agent falsely accused a witness named Cannon of participating in the alleged crime in order to induce him to give the entire story, "the prosecutor supported Cannon's veracity by falsely assuring the jury 'no one threatened Cannon.' ").

8. 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).