Darryl WOODARD, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–1134.

District of Columbia Court of Appeals.

Argued April 7, 2009.
Decided May 24, 2012.

Shilpa S. Satoskar, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief for appellant.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time, and Roy W. McLeese III, Elizabeth Trosman, and Daniel Butler, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and FARRELL,* Senior Judge.

FARRELL, Senior Judge:

A partly reconstituted division of the court granted rehearing in this case to reconsider our previous holding that the prosecutor's closing argument did not foster a misleading impression by the jury, sufficient to warrant reversal, of the credibility of an important government witness. *See Woodard v. United States,* 1 A.3d 371, 376 (D.C.2010). We now hold that the argument in question might well have improperly bolstered the witness's credibility in jurors' minds, and that because the trial judge declined to adopt a corrective measure reasonably proposed by the defense, appellant's substantial rights were affected and his conviction must be reversed. We vacate our earlier judgment and opinion, and publish this opinion in its place.

* Senior Judge Farrell replaced Associate Judge Kramer on the division following Judge Kramer's retirement from the court in 2011.

## I.  Factual Background

The case stems from the October 9, 2002, shooting of Michael Cary and Ebony Byrd, for which appellant and Edward McCoy were charged with, among other things, conspiracy to assault another person with a firearm and assault with a dangerous weapon (ADW). A jury originally found appellant guilty of conspiracy and ADW and McCoy guilty of conspiracy, two counts of ADW, and other charges. On appeal, we affirmed McCoy's convictions but reversed appellant's because of the introduction of his improperly obtained confession. *See McCoy v. United States,* 890 A.2d 204 (D.C.2006).

On appellant's retrial before a jury the following evidence was presented, chiefly through the testimony of Cary and Byrd. On the night of March 1, 2002, Cary and Byrd went to a club with friends where they encountered appellant, who was also with friends. A fight broke out between Cary and his friends and appellant and his friends, which was broken up by the club security personnel. Later, when the club closed, Cary and Byrd went to the parking lot and saw appellant get into a Volvo with three other men. Cary and Byrd got into Cary's car and began to drive home, but soon observed that the Volvo was following them. As Cary drove through the Third Street tunnel, a bullet entered the driver's side window of his car. The Volvo pulled alongside the driver's side, and Cary could see appellant in the passenger seat firing at him and another man firing out of the sun roof. Byrd testified that she saw appellant firing out of the sun roof.

Cary was hit by four bullets and continued to drive until he lost consciousness, at which point Byrd climbed over him into the driver's seat and drove to the hospital.

At the hospital, Byrd told police that she knew the man she had seen shooting because his sister lived across the street from her. Byrd was shown a photo array from which she identified appellant as the person she had seen shooting. Cary told the police that he knew the shooter as a "DJ," and selected a photograph of appellant from a photo array.

At the original trial, Cary and Byrd had testified that they did not see appellant with a gun, but Cary testified that he saw McCoy shooting out of the sun roof.[1] At the retrial of appellant, both witnesses were impeached with their earlier testimony. When Cary was asked why he had previously testified that he did not know if appellant shot him, he replied, "I don't know." When asked about her previous testimony, Byrd testified, "I didn't want to tell you nothing because I felt threatened for my life so I didn't say—I was told not to say nothing. My mother told me don't say nothing."

In summation, defense counsel argued that Byrd had explained her previous testimony by saying, " 'that's what my mother told me, and I also felt threatened.' We didn't hear anything to substantiate that. There was nothing with reference to the fact that she had been threatened. We submit to you that just doesn't make sense." In rebuttal argument, the prosecutor explained the testimony of both Cary and Byrd as follows:

At [the first trial] . . . they held back information. And why did they do so? Well, they both gave you their explanations, and I'll leave it to that. But think about it. A court proceeding where they have to face the person that they're identifying as the shooter, the fact that

they would hold back at that time. Use your common sense. You can understand what's going on here. You know what's going on.

. . .

But then, they come here, and finally they have gotten past those concerns; they have gotten past those reasons that they held back their testimony, and they told you what they had told the police from the beginning.

Defense counsel objected, asserting that the prosecutor's argument that "Mr. Cary and [Ms.] Byrd did not I.D. Mr. Woodard as the shooter at the first trial because they were probably scared to identify the shooter in court" was deceptive, because in fact Cary had identified McCoy as a shooter at the first trial, where McCoy was present as a codefendant. Defense counsel asked to be allowed to reopen and introduce additional evidence on that point, or else for the court to "instruct the jury and to take judicial notice . . . that Ed McCoy was convicted in this case." The judge overruled the objection. The jury convicted appellant of conspiracy, though unable to agree on the ADW charge.

## II. Analysis

Appellant's main contention, and the only one we need address, is that the prosecutor's argument in summation improperly urged the jury to draw the inference that Cary had been afraid to identify a shooter face-to-face at the first trial, a fear he had since "gotten past," when Cary in fact had identified McCoy as one of the shooters in that proceeding. Although the present jury knew that Cary had testified at the first trial that McCoy was a shooter,

---

1. That testimony at one point was as follows:

Q. And [Woodard] was not the shooter; is that right?
A. Right.

. . . .

Q. And you did see Mr. McCoy shooting, correct?
A. Yes.

it did not know that his identification had been made face-to-face as McCoy was a codefendant there. Appellant thus argues that the prosecutor was able to foster a misleading impression about the credibility of a key government witness—*i.e.*, that he had overcome an original unwillingness to identify a shooter he faced at trial—and that the judge's refusal to take properly requested corrective action resulted in unfair bolstering of the government's case.

■ Just as a prosecutor's "failure to correct known false or misleading testimony of a government witness violates due process," *Woodall v. United States,* 842 A.2d 690, 696 (D.C.2004), so a prosecutor's misleading statements during closing argument, especially rebuttal argument, may " 'so infect[ ] [a] trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). *See also Powell v. United States,* 880 A.2d 248, 258 n. 23 (D.C.2005); *Jenkins v. Artuz,* 294 F.3d 284, 294 (2d Cir.2002); *United States v. Kojayan,* 8 F.3d 1315, 1324 (9th Cir.1993). The prosecution's duty of candor in this regard extends to facts not in the record but known to the government. *Powell,* 880 A.2d at 258 n. 23 (prosecutors must "guard against inviting inferences of fact arguably contrary to evidence of which they are aware but which is not of record in a case"). Ultimately, it is not the intent or *bona fides* of the prosecutor that matter in this context, *see Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); the law's aim is "to ensure [that the] jury is not misled by falsehoods," *Woodall,* 842 A.2d at 697, and even unintended misleading remarks can have "the same potential impact on the jury." *United States v. Sutton,* 542 F.2d 1239, 1242

(4th Cir.1976). A statement may be "technically accurate" or "factually correct" but still misleading "based on the natural and reasonable inferences it invites." *Jenkins v. Artuz,* 294 F.3d at 294.

■ Here, a "natural and reasonable inference" the jury could have drawn from the prosecutor's argument was that Cary had identified no one face-to-face as a shooter at the first trial. The strong suggestion that Cary had been afraid "to face the person [he would be] identifying" and thus "held back" information could readily be taken to mean that Cary had identified no one who was in court on that occasion, contrary to the prosecutor's knowledge, but not the jury's, that McCoy had been a codefendant on trial. It is possible, of course, that the jury hearing the prosecutor's remarks guessed that he had only appellant in mind (surmising that McCoy had indeed been jointly tried), but nothing in the remarks or elsewhere in the prosecutor's argument implied that he was distinguishing among persons whom Cary was afraid to identify face-to-face. In the words of the *Jenkins* court, "[r]easonable jurors would have had to make a considerable inferential leap," 294 F.3d at 293–94, to reach that distinction, rather than take the remarks to mean what they naturally implied: that Cary's fear of "fac[ing]" the person—any person—he would otherwise be "identifying as the shooter" had caused him to "h[o]ld back [his] testimony."

This was not a case, in short, like *Donnelly v. DeChristoforo, supra,* where the message that Cary had feared identifying anyone in court face-to-face would be one among "the plethora of less damaging interpretations" the jury could make of the prosecutor's remarks. 416 U.S. at 647, 94 S.Ct. 1868. Either Cary had been afraid to identify Woodard alone, not anyone else in court; or he had been afraid to identify anyone he was "fac[ing]" in court. Those

were the sole available understandings of the comment, and nothing elsewhere in the argument, or in the evidence, would naturally have caused the jury to choose the first meaning, supported by the facts, and not the second.

Neutralizing the misleading impression the prosecutor thereby fostered would not have derailed the trial. In objecting, the defense asked to be allowed to reopen the testimony only to supply the missing fact of McCoy's presence at the first trial; or alternatively asked the judge to note that fact judicially and instruct the jury accordingly. Either of these measures, it is true, might have highlighted a single fact related to Cary's credibility, and also have cast a somewhat unflattering light on the prosecutor's conduct in summation. But that was not an unfair price to exact for the misimpression, and would have avoided the difficulty this court now has of weighing the magnitude of prejudice to appellant against the systemic costs of a new trial. The judge erred in not choosing either corrective measure.

■ The government argues that any error was harmless, but we cannot agree. Even conceding that the prosecutor's statement, unremedied, did not amount to a due process violation, we can have no confidence that it did not substantially affect the jury's verdict on this record. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Najafi v. United States*, 886 A.2d 103, 110–11 (D.C.2005). The credibility of Cary, one of only two eyewitnesses to the alleged shootings, was a key issue in the trial, and the stark inconsistency in his successive recollections of appellant's involvement (or not) in the shooting was something the prosecutor had to address and, if possible, minimize. While Byrd too named appellant as a shooter (contrary to her testimony at the first trial that she had "no idea" who had been shooting), we cannot discount the reasonable likelihood that only the combined testimony of these two witnesses caused the jury to convict, and that Cary's credibility in the jury's eyes was bolstered by an unfair advantage.

The fact that, as the government points out, the jury convicted appellant only of conspiracy does not allow us to ignore the error. Appellant's role in the shooting, including whether he fired shots, was important to that count as well because the testimony that he fired shots was evidence that he joined together with the other occupants of the car to commit the crime and was not an uninvolved back seat passenger. Indeed, as the trial judge recognized, the evidence of concerted activity not confirmed by appellant's actual part in the shooting was "pretty thin." Under all of the circumstances, we cannot exclude the reasonable and realistic likelihood that the misleading argument as to Cary's credibility affected the jury's decision to convict.

*Reversed and remanded.*

BEFORE: WASHINGTON,** Chief Judge; GLICKMAN, BLACKBURNE-RIGSBY, THOMPSON,** OBERLY, Associate Judges; RUIZ, Associate Judge, Retired; REID and FARRELL,** Senior Judges.

## ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing or rehearing en banc, it is

---

** Senior Judge Farrell replaced Associate Judge Kramer on the division following her retirement in 2011.

Judge Reid's status changed to Senior Judge on December 12, 2011.

Judge Ruiz's status changed to Associate Judge, Retired, on September 1, 2011.

ORDERED that this court's July 22, 2010 decision published at 1 A.3d 371, is hereby vacated. It is

FURTHER ORDERED by the merits division ** that the petition for rehearing is granted for the reasons stated in the revised opinion of the court issued this date. It is

FURTHER ORDERED that the petition for rehearing en banc is denied as moot without prejudice to the filing of a new petition(s) addressed to the revised opinion.