Gary A. FREEMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CO–414.

District of Columbia Court of Appeals.

Submitted Oct. 10, 2012.

Decided Feb. 7, 2013.

Randy Evan McDonald, Takoma Park, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and John P. Mannarino, Carolyn K. Kolben, and Angela G. Schmidt, Assistant United States Attorneys, were on the brief for appellee.

Before OBERLY and BECKWITH, Associate Judges, and FARRELL, Senior Judge.

OBERLY, Associate Judge:

Seventeen years after he was convicted of first-degree murder and other armed offenses in connection with a road-rage

incident, Gary Freeman's convictions were vacated and re-entered to permit him to note an appeal because his trial counsel had failed to do so after Mr. Freeman was sentenced in 1993. Unfortunately, the trial transcripts from Mr. Freeman's 1992 trial were no longer available when his motion for appointment of counsel was finally granted, and upon receipt of Mr. Freeman's notice of appeal, this court remanded the case to the trial court to permit Mr. Freeman to reconstruct the trial record pursuant to District of Columbia Court of Appeals Rule 10(c). The "statement of evidence" that Mr. Freeman's appellate counsel submitted was a paragraph recitation stating that the "attached records"—which were identical to the documents submitted as part of the government's proposed statement of evidence—were the best available means to reconstruct the record (neither Mr. Freeman nor his trial counsel remembered anything about the trial proceedings) and that the records were insufficient to protect appellant's right to appeal. The government objected to Mr. Freeman's statement of evidence because it "d[id] not include a statement of the evidence presented at trial," and it moved the trial court to approve the 39–page statement of evidence and associated appendices that it had created based on its trial file, the trial judge's (Judge Shellie Bowers) detailed contemporaneous notes of the motions hearings and trial proceedings, trial exhibits, the jury instructions, and the pleadings filed in the case. Mr. Freeman did not oppose the government's motion, but maintained that the statement of evidence was insufficient to permit meaningful appellate review. The trial judge (Judge Craig Iscoe, to whom the case was assigned after Judge Bowers retired) approved the government's statement of evidence and appendices and ordered that it be included in the record on appeal.

■ Before this court, Mr. Freeman makes no specific claims of error; instead, he argues that the inadequacy of the reconstructed record prevents appellate counsel from reviewing the record for possible errors and prevents this court from engaging in meaningful appellate review. Where an appellant claims no specific error, he is entitled to reversal only if he can demonstrate that "the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred." *Romero v. United States,* 956 A.2d 664, 668 (D.C. 2008) (internal quotation marks omitted); *see also Egbuka v. United States,* 968 A.2d 511, 516 (D.C.2009).

■ "When the sole issue before this court is the accuracy or completeness of the trial transcript, we conduct an independent review of the record to assess its adequacy." *Romero,* 956 A.2d at 667–68. Based on our "independent review," we are satisfied that the reconstructed record would have adequately permitted appellate counsel an opportunity to review substantial and crucial portions of the trial for any error, and that no omitted transcripts or unreconstructed portions meet the "substantial" or "crucial" test. Although "the drafting of the substitute statement of proceedings fell to a judge who did not preside over the trial," *Egbuka,* 968 A.2d at 518, Judge Bowers had taken detailed and contemporaneous notes, which covered the testimony of all witnesses at the motions hearings and during trial, noting direct— and cross-examinations and exhibits identified by each party, and which included the jury instructions and the length of jury deliberations. In addition to Judge Bowers's notes, the reconstructed record includes government exhibits admitted into evidence, Mr. Freeman's pretrial suppres-

sion and evidence-spoliation motions and the government's oppositions to those motions, and a transcript from Mr. Freeman's pretrial hearing on his suppression motion. Mr. Freeman's appellate counsel also had available to him trial counsel's post-trial motion to set aside the verdict and grant a new trial, which identified several possible grounds for appeal.

■ "Although the loss of an entire trial transcript . . . increases the likelihood that meaningful appellate review will be impossible," *Cole v. United States*, 478 A.2d 277, 286 (D.C.1984), here we are presented with an exceptionally detailed reconstruction of the record and yet Mr. Freeman has made no attempt to identify any area of concern that might be raised on appeal. While not dispositive, "an appellant's inability to proffer specific prejudicial errors . . . is an important factor in evaluating whether the lack of a verbatim transcript is prejudicial." *Cole*, 478 A.2d at 286.

■ Contrary to the views expressed in the dissent, *Egbuka* and *Cole* do not call for reversal here. In *Cole*, the substitute statement of evidence was "approximately two and one-half double-spaced pages long[,] . . . briefly summariz[ing]" the direct testimony of the witnesses at trial and summarizing the cross-examination of only one witness. 478 A.2d at 280. Moreover, the reconstructed record in *Cole* was based on "*post hoc* reports of counsel, rather than . . . a contemporaneous account of the trial proceedings." *Id.* at 282. Likewise, in *Egbuka*, the reconstructed record of missing transcripts was based, in part, on *post hoc* reports from counsel and Egbuka, and the entire direct testimony and "significant portions" of the cross-examination of a government witness were among the portions of the trial proceedings that could not be reconstructed at all. 968 A.2d at 514, 517–18. Moreover, the trial judge's ten pages of notes "reflect[ed] only that which he thought important to note for his own purposes at trial," *id.* at 518, in contrast to the trial judge's thirty pages of notes in this case, which covered the direct testimony and cross-examination of every witness. Indeed, we are unaware of another reconstructed-record case in which the judge's contemporaneous trial notes were as copious and detailed as the ones before us here.

Notwithstanding the comprehensive reconstructed record in this case, the dissent would reverse because we have no record of the jury selection, opening statements, and closing arguments, which it contends are critical to meaningful appellate review.[1] Those portions of the trial are not insignificant; however, we are unwilling to reverse a seventeen-year-old murder conviction based on the remote possibility that prejudicial error occurred during one of these phases. Although, as the dissent points out, reversals do occur from errors

1. The dissent contends that our court's cases follow the approach of *United States v. Selva*, 559 F.2d 1303 (5th Cir.1977), a case that reversed appellant's conviction based on missing transcripts of closing arguments, holding that "[w]hen . . . a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal." *Id.* at 1306 (footnote omitted). As we have shown above, however, the facts in our leading cases, *Egbuka* and *Cole,* are far different from those before us today. The approach in *Selva,* moreover, "has not been widely followed" by other federal circuits, *United States v. Huggins,* 191 F.3d 532, 537 & n. 2 (4th Cir.1999) (citing cases rejecting *Selva* and requiring specific showing that right to appeal was prejudiced by unrecorded portions of trial even when counsel on appeal is not the same as trial counsel). We find *Huggins* and the cases cited therein more in keeping with our own cases, such as *Romero.*

during voir dire, opening statements, and closing statements, what we know from the reconstructed record makes the possibility of reversible error *in this case* mere speculation. Unlike the cases cited by the dissent, in which improper prosecutorial comments during closing arguments resulted in prejudicial error given the weak or problematic evidence against the defendants in those cases, the evidence against Mr. Freeman, as demonstrated in the reconstructed record, was strong—involving multiple eyewitnesses, two of whom identified Mr. Freeman as the shooter, and a clear connection to the vehicle involved in the road-rage incident that led to the shooting. The possibility that an error occurred during opening statements or closing arguments, that there was no corrective action, and that the resulting prejudice was strong enough to overcome the substantial evidence of Mr. Freeman's guilt is too remote to warrant reversal and remand for a new trial.

Similarly, although serious errors may occur during jury selection—*e.g.*, the striking of jurors for discriminatory reasons—it would be pure conjecture to set aside Mr. Freeman's conviction based on that possibility in this case. Jury selection occurred immediately after trial counsel had argued two suppression motions; the possibility that a *Batson*-type error, *post* at 15–16 (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)), or anything resembling it, occurred without objection from defense counsel, who was actively litigating the case, and that any error was left unremedied by the trial court is too unlikely to merit reversal.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

BECKWITH, Associate Judge, dissenting.

The majority holds that the reconstructed record in this case, which consists primarily of the trial judge's notes of the trial witnesses' testimony, is sufficient to protect Gary Freeman's right to appeal. As the government acknowledges, however, we have no record of the jury selection, the opening statements, and the closing arguments in this case.[1] Contrary to the majority's conclusions that "the reconstructed record would have adequately permitted appellate counsel an opportunity to review substantial and crucial portions of the trial for any error," and that "no omitted transcripts or unreconstructed portions meet the 'substantial' or 'crucial' test," *ante* at 435, these missing portions *are* crucial aspects of Mr. Freeman's 1992 murder trial, and I view as illusory his right to a meaningful appeal with no record of them whatsoever.

That the closing arguments, the jury selection, and the opening statements are critical parts of the trial is beyond serious dispute. In *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977), a case often cited by this court, the United States Court of Appeals for the Fifth Circuit reversed the appellant's convictions based on an inadequate record where the closing arguments of both counsel were missing from the transcript. As the Fifth Circuit noted, "[o]ften, ... even the most careful consideration of the available transcript will not permit us to discern whether reversible error occurred while the proceedings were not being recorded," and requiring new counsel "to establish the irregularities that may have taken place" would "render merely technical his right to appeal."[2] *Id.*

---

1. The trial judge's notes of the testimony presented at trial also largely omitted any refer-

ence to objections posed by counsel or to the rulings on those objections.

Though the majority disavows *Selva*'s approach, *see ante* at 436 n. 1, I rely less on *Selva* itself than on the numerous opinions of this court that have repeatedly cited *Selva*,[3] relied upon its reasoning,[4] and long followed its general approach recognizing that prejudice can stem from the absence of a crucial transcript even where the defendant asserts no specific error. We have held that "[p]rejudice may be shown in one of two ways: (1) first, by raising a specific claim of error and showing that it is impossible for this court to determine from the available record whether or not prejudicial error occurred; or (2) second, by showing that, even if no specific error is claimed, the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred." *Egbuka v. United States*, 968 A.2d 511, 516 (D.C.2009); *Romero v. United States*, 956 A.2d 664, 668 (D.C.2008). The second way of showing prejudice essentially restates *Selva*'s holding that when a defendant is represented by new counsel on appeal, and when a substantial and significant portion of the record is missing and unable to be adequately reconstructed, it is impossible for the court "to conclude affirmatively that no substantial rights of the appellant have been adversely [a]ffected by the omissions from the transcript," and reversal is required.[5] *Selva*, 559 F.2d at 1306. Our cases demonstrate that this approach—suggested by *Selva* and affirmed by this court as a way to show "preju-

2. *Selva* cited myriad cases finding reversible error due to "similarly significant omissions." *Selva*, 559 F.2d at 1306 n. 5 (citing *United States v. Gregory*, 472 F.2d 484 (5th Cir.1973) (missing voir dire and opening statements); *United States v. Garcia–Bonifascio*, 443 F.2d 914 (5th Cir.1971) (missing government's closing argument); *United States v. Upshaw*, 448 F.2d 1218 (5th Cir.1971) (missing defense arguments); *United States v. Rosa*, 434 F.2d 964 (5th Cir.1970) (missing entire transcript); *United States v. Atilus*, 425 F.2d 816 (5th Cir.1970) (missing entire transcript); *Stephens v. United States*, 289 F.2d 308 (5th Cir.1961) (missing voir dire and closing arguments)).

3. *See David v. United States*, 957 A.2d 4, 6–7 (D.C.2008); *Romero v. United States*, 956 A.2d 664, 670 (D.C.2008); *Cole v. United States*, 478 A.2d 277, 282 (D.C.1984); and *Lucas v. United States*, 476 A.2d 1140, 1142 (D.C. 1984).

4. In *Lucas*, 476 A.2d at 1143, for example, the court cited *Selva* for the proposition that "[w]here the missing portions of a transcript prevent new appellate counsel from reviewing for possible error a 'substantial and crucial' portion of the trial, reversal may be required." *Id.* at 1142–43 (noting that in *Selva* the "crucial omission" was of all arguments made to the jury). And in *Cole v. United States*, 478 A.2d 277 (D.C.1984), this court cited *Selva* for numerous propositions, including its statement that the trial court "should set aside the judgment and order a new trial" if the reconstructed record is insufficient to permit appellate review. *Id.* at 285.

5. When other courts have rejected *Selva*'s approach they have read it as creating a rule in cases involving new counsel on appeal that allows for reversal without a showing of specific prejudice. *See, e.g., United States v. Huggins*, 191 F.3d 532, 537 (4th Cir.1999). However these courts characterize *Selva*, there can be no doubt that the rule in this jurisdiction—similar to the Fifth Circuit's approach—is that a criminal defendant can establish prejudice without making a specific claim of error "by showing that ... the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred." *Egbuka*, 968 A.2d at 516. In *Cole*, this court found it unnecessary to follow the "rigidly bifurcated analysis" of some Fifth Circuit opinions—including *Selva*—but readily "reaffirm[ed]" its "greater willingness to conclude that the lack of a complete transcript is prejudicial when counsel appearing before this court did not participate at trial." *Cole*, 478 A.2d at 287 n. 15.

dice"—is increasingly implicated in cases, such as this one, where the entire transcript of the trial is missing, *see Cole v. United States*, 478 A.2d 277, 286 (D.C. 1984); in cases, such as this one, where a great deal of time has passed before the attempt at reconstruction begins,[6] *see id.* at 286 n. 13; *Egbuka*, 968 A.2d at 518; in cases, such as this one, where "critical portions of the transcript were never able to be reconstructed," *id.* at 517; and, most significantly, in cases, such as this one, where the defendant's "appellate counsel was not his trial counsel." *Id.* at 519.

The government's principal argument as to why, even in the absence of any notes or recollections by any of the participants in the trial regarding the voir dire proceedings, opening statements, and closing arguments, the reconstructed record is adequate for meaningful review is that "those phases of the trial infrequently give rise to prejudicial error." Setting aside the obvious drawbacks of assessing the prejudice to a defendant's appellate rights based upon rough probabilities, a sampling of our own decisions demonstrates that reversal based on errors during these phases of trial is not rare.[7] *See, e.g., Woodard v. United States*, 56 A.3d 125, 129 (D.C.2012) (trial court's failure to remedy prosecutor's argument fostering a misleading impression about a key government witness's credibility was not harmless error); *An-*

*thony v. United States*, 935 A.2d 275, 283–88 (D.C.2007) (judge's instruction to jury in the wake of prosecutor's misrepresentation of defense testimony during rebuttal argument was insufficient to cure the prejudice); *Fearwell v. United States*, 886 A.2d 95, 101–03 (D.C.2005) (trial court's failure to remedy prosecutor's improper rebuttal argument based on facts not in evidence was reversible error); *(Leon) Robinson v. United States*, 878 A.2d 1273, 1281–91 (D.C.2005) (reversing defendant's convictions based upon trial court's error in handling prosecutor's striking of black females from the jury); *Tursio v. United States*, 634 A.2d 1205, 1209–13 (D.C.1993) (reversing defendant's murder conviction on grounds that trial court erred in finding that prosecutor's explanations for peremptory strikes were sufficiently race-neutral). These reversals also occur when we are reviewing only for plain error.[8] The majority's conclusion that these omitted portions were not "substantial" or "crucial" contradicts not only *Selva* and the decisions of this court, but also the reality that many reversals do stem from errors in these parts of trials. *See, e.g., Cole*, 478 A.2d at 286–87 (reversing conviction where, among other important omissions, the reconstructed record contained "no mention of either party's opening statements and only a cursory summary of the closing arguments"); *Selva*, 559 F.2d at

---

**6.** Neither Mr. Freeman nor the prosecutor could reconstruct from memory what happened during the portions of the trial that are not covered by the trial judge's notes, and trial counsel had no notes from the trial.

**7.** It is also not unusual, moreover, for this court to identify error in these aspects of the trial but conclude, based upon very case-specific considerations, that the error did not warrant reversal. *See, e.g., (Michael) Robinson v. United States*, 50 A.3d 508, 532 (D.C. 2012) (rebuttal argument); *Lee v. United States*, 668 A.2d 822, 830–33 (D.C.1995) (rebuttal argument); *Fornah v. United States*,

460 A.2d 556, 562 (D.C.1983) (closing argument); *cf. Gilliam v. United States*, 46 A.3d 360, 372–77 (D.C.2012) (Ruiz, J., concurring) (rebuttal argument).

**8.** *See, e.g., Lewis v. United States*, 541 A.2d 145, 146–49 (D.C.1988) (prosecutor's improper statements during closing and rebuttal arguments led to reversal under a plain error standard of review); *Dyson v. United States*, 450 A.2d 432, 440–43 (D.C.1982) (prosecutor's remarks in closing regarding appellant's prior convictions constituted plain error).

1306 n. 5 ("Here, we are confronted with the absence of all arguments made to the jury.").

The majority's observation that appellate counsel had the benefit of the motion for new trial filed by Mr. Freeman's trial counsel is not reassuring, as a new trial motion is not a vehicle for pressing every eventual appellate claim. *See* Super. Ct. Crim. R. 33 (permitting a defendant to file a motion based on newly discovered evidence within three years of the verdict or a motion on any other grounds—"if the interests of justice so require"—within seven days of the verdict). The question here is not whether appellate counsel was alerted to some possible grounds for appeal, but whether the destruction of crucial portions of the trial transcript foreclosed counsel from examining those phases of the trial for possible error. *Romero v. United States*, 956 A.2d at 668. Appellate lawyers routinely challenge trial court rulings that were not the subject of any motion for new trial. And not infrequently, they prevail. *See, e.g., Fearwell*, 886 A.2d at 101–03; *Anthony*, 935 A.2d at 283–88; *(Leon) Robinson*, 878 A.2d at 1288–91.

In concluding that the possibility of prejudicial error was remote because the government's case was strong, the majority assumes it is possible to glean such proof of harmlessness from a judge's handwritten notes of a lengthy murder trial that contain no record of trial counsel's objections or the discussions and rulings that followed those objections and no record of opening statements, closing arguments, or jury selection.[9] This argument cannot be squared with this court's many reversals in cases where eyewitnesses—sometimes a lot of them—had identified the defendant, *see, e.g., Benn v. United States*, 801 A.2d 132, 145 (D.C.2002) (exclusion of alibi witness's testimony not harmless error though "Benn was identified by five apparently disinterested witnesses"),[10] and it also overlooks the fact that a *Batson*-type error in jury selection would require reversal regardless of the strength of the government's case. *See Batson v. Kentucky*, 476 U.S. 79, 100, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (stating that "petitioner's conviction [must] be reversed" when the facts establish purposeful discrimination and the prosecutor has not offered a neutral explanation); *(Edward) Robinson v. United States*, 890 A.2d 674, 679–80

9. It is also hard to judge the strength of the government's case without knowing what evidence the parties objected to, how hard they fought to admit it or keep it out, what the prosecutor made his focus in closing argument, and the extent to which the defense theory met the force of the prosecutor's summary of his case. This is the stuff of which harmlessness determinations are often made. *See, e.g., Allen v. United States*, 837 A.2d 917, 923 (D.C.2003) (considering, in a harm assessment, the "closing argument stressing the centrality—at least in the prosecutor's mind—of the [issue]"); *Garris v. United States*, 390 F.2d 862, 866 (D.C.Cir.1968) (stating that a prosecutor's "own estimate of his case, and of its reception by the jury at the time, is, if not the only, at least a highly relevant measure now of the likelihood of prejudice"); *United States v. DeLoach*, 504 F.2d 185, 191 (D.C.Cir. 1974) (stating that if the "concluding remarks

by counsel had really been unimportant, the prosecutor would not, we think, have objected to them so strenuously"); *Andrews v. United States*, 922 A.2d 449, 460–61 (D.C.2007) ("If *the admission* of the contested parts of [the defendant's] statement would have been substantially prejudicial to the government, as the prosecutor insisted, then it is difficult to understand why *the exclusion* of the same evidence was not similarly and unfairly prejudicial to the defense.").

10. *See also Woodard*, 56 A.3d at 129 (failure to remedy prosecutor's misleading closing argument was not harmless error where two eyewitnesses named Woodard as a shooter); *Minor v. United States*, 57 A.3d 406 (D.C. 2012); *Miller v. United States*, 14 A.3d 1094, 1098–1101, 1123 (D.C.2011).

(D.C.2006) (stating that "the erroneous rejection of a *Batson* challenge" is "per se reversible").

In *Cole*, where the government argued that the omissions in the transcript were harmless because the reconstructed record established that the defendant had admitted to all of the elements of the offense and because the defendant was unable to proffer any specific trial error, this court rejected the claim because of the inadequacy of the record. 478 A.2d at 285–87. "As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript." *Hardy v. United States*, 375 U.S. 277, 288, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring). When a trial transcript is missing, our cases hold that we must determine whether the reconstructed record is adequate to permit us "to exclude the possibility of any error other than harmless error." *David v. United States*, 957 A.2d 4, 7 (D.C.2008) (internal quotation marks and citation omitted); *see also Egbuka*, 968 A.2d at 516. Under a straightforward application of our case law to the circumstances of this case, the majority's suggestion that it

would require conjecture to conclude that error may have occurred during missing portions of the transcript is a reason to grant, not deny, a new trial in this case.

The government acknowledges that the loss of an entire trial transcript "increases the likelihood that meaningful appellate review will be impossible." *Cole*, 478 A.2d at 286–87. That likelihood is particularly high in an eight-day-long murder trial in which the parties were completely unable to reconstruct several essential portions of the trial. Not every instance of missing transcripts requires reversal. *David*, 957 A.2d at 6; *Selva*, 559 F.2d at 1306 n. 5. But the passage of more than a decade between the trial and the time the parties began trying to reconstruct the trial—a delay that cannot fairly be blamed on Mr. Freeman[11]—makes this case unique. Judge Bowers's notes went a long way toward recreating the record here, but those notes cannot compensate for the complete absence of any record of the closing arguments, the jury selection, and the opening statements. As Mr. Freeman has been deprived of meaningful review of the convictions for which he has now spent

---

11. The attorney who neglected to file Mr. Freeman's notice of appeal was subsequently suspended from the practice of law for failing to note appeals in two other clients' criminal cases. *See In re Drew*, 693 A.2d 1127, 1127–28 (D.C.1997). Meanwhile, from prison, Mr. Freeman made several unsuccessful attempts to revive his own appeal through various communications to the court and to Bar Counsel. At the outset, Mr. Freeman apparently did not get word until five years after his sentencing that his motion to set aside the verdict had been denied five years earlier, in April of 1993; this news came in a letter dated February 5, 1998, from an attorney who had previously been told that the motion was still pending. The letter advised Mr. Freeman to write to the sentencing judge to request an attorney, which Mr. Freeman said he did. In 2000, Mr. Freeman filed a bar complaint against his trial lawyer, noting that

he had asked the trial judge to appoint an attorney to assist him, but the judge had denied his request. In 2001, Bar Counsel dismissed the complaint "without prejudice to reconsidering it if [the lawyer] applies for reinstatement." In 2002, Mr. Freeman filed a pro se motion requesting appointment of counsel and permission to file a late notice of appeal, stating that since he learned in 1998 that the court had denied his new trial motion, he "ha[d] been trying to find legal help, however, to no avail." The trial court denied the request because "[n]owhere in the Motion is there even an attempt to explain the nearly nine-years delay in its filing." In 2005, after Mr. Freeman again asked the trial court to appoint counsel in his case, the government agreed that Mr. Freeman should have counsel and a new appeal. No one is suggesting at this point that the delay in filing a notice of appeal should be held against Mr. Freeman.

more than twenty years in prison, reversal is in order.